## COUCH v. TERRY'S ADM'RS.

1. A surety, who has been compelled to pay the debt of the principal, may recover at law of a co-surety, not only his proportion of the debt, but under the act of 1839, may also recover his proportion of the part of any other co-sureties shown to be insolvent. But notwithstanding this statute, chancery has concurrent jurisdiction.
2. If the party elects his remedy in chancery, it is not necessary to make the principal debtor, or an insolvent co-surety a party.

Writ of Error to the Court of Chancery sitting in Lawrence county.

The complainant alledges, that on the 15th of April, 1839, Thomas J. Couch as principal, and himself and William L. Couch, and David Terry, as sureties, executed their writing obligatory, by which they obliged themselves to pay to the administrators of the estate of Daniel Johnson, deceased, the sum of $1137 58, one day after date. On this writing a judgment was recovered by the obligees, in the county court, on the 19th January, 1841, against all the obligors, (saving the principal, who was not served with process,) for the sum of $1137 57, debt, $160 58 damages, and $21 37, costs of suit. Of this judgment the sum of $985 88, was collected by the sale of the defendant's property, on the first Monday in June, 1841; and the same is now satisfied in full.

T. J. Couch, the principal, and W. L. Couch, the surety, were insolvent, and have so continued ever since the rendition of the judgment. David Terry has died since the judgment was recovered, and Drury Stovall and Samuel M. McGaughey have taken letters testamentary on his estate.

The bill prays that Terry's executors be made defendants thereto, that they answer the same, and an account be taken of the amount of money paid by complainant as a co-surety of the testator, and the interest which has thereon accrued, and that one half the sum thus ascertained, be adjudged to

29

him from the testator's estate. And that such other relief be granted as may be appropriate to the case.

The defendants demurred to the bill, and assigned for cause that the complainant had an adequate remedy at law, and that Thos. J. and Wm. L. Couch, should have been made parties to the suit. The Chancellor sustained the demurrer, and dismissed the bill without prejudice, at the complainant's costs.

T. M. PETERS and J. B. SALE, for the plaintiff in error. A resort to equity was necessary to enable the complainant to recover of the defendants the additional charge upon their testator's estate, in consequence of the insolvency of one of the co-sureties. The act of 1839, (Clay's Dig. 533, § 12,) does not modify the law in this respect, except where the suit is by motion pending an action against the surety who makes the motion. [1 Story's Eq. 470, *et seq.* §§ 492, 496 to 500; 5 Ves. Rep. 592.] The remedy at law is at least doubtful, and equity may be resorted to. ]1 Stewt. *& P.* Rep. 135.]

The act of 1839 merely furnishes a cumulative remedy, leaving the party his election to proceed in equity, if he think proper. The principal, and one of the sureties being insolvent, they need not have been made parties. [Calvert on Parties, ch 1, § 1, *et seq.;* Story's Eq. Pl. §§ 76, 77, 159, 161, 169; 2 Stew, R. 280; 3 Id. 233; 1 Stew. & P. R. 317; 2 Id. 361; 4 Id. 447; 5 Id. 133; 2 Porter's R. 351; 4 Id. 65; 2 Ala. R. 264; 6 Id. 304.]

COLLIER, C. J.—The act of 1839, "for the relief of sureties in certain cases," provides, that when a suit may be pending against a surety, he may give notice to any co-surety not sued, and recover a judgment against him for his proportion of the debt: "*Provided however*, that if any of said co-sureties are insolvent, the surety thus sued as aforesaid, may, on said motion to be made as above, recover a judgment against said co-surety, or sureties, thus to be notified, the proportion which such co-surety or sureties should pay, if such insolvent co-surety, or sureties, were not bound for said debt, or demand." [Clay's Dig. 533, § 12.] In Sher-

Couch v. Terry's Adm'rs.

rod v. Rhodes, 5 Ala. Rep. 683, it is said, " At common law, one surety who was compelled to pay the debt, could only recover from another surety an *aliquot* part, or that sum which is produced by a division of the debt actually paid by the number of the sureties, without regard to their solvency. But the rule in a court of chancery is, to divide the loss equally among the solvent sureties. This equitable rule has been made the rule at law by a statute of this State." The enactment to which the court had reference is that from which we have quoted above.

The right of one surety to sue a co-surety is consequent upon the payment of the debt for which they were both bound; and the remedy by action in the usual form is not impaired by the legislature having prescribed a summary remedy by notice and motion. [Roberts v. Adams, 6 Porter's Rep. 361.]

In Young v. Clark, 2 Ala. R. 264, it was decided, with reference to the act of 1839, that where there are five sureties to a note, three only of whom are solvent, and the holder of the paper sues one who is solvent with one who is insolvent, the solvent surety may move against the other solvent sureties, and recover of each one third of the sum for which judgment is rendered against him : *Further*, the statute applies as well to contracts then in existence as to those made in future : *Also*, that the motion may be made either at the term when judgment is rendered in favor of the holder of the security, or at any subsequent term ; that he is as much entitled to, and more in need of relief when he has actually paid the debt secured, than when only in danger of being compelled to do so. .

Thus we see, that independently of the statute, one surety may sue his co-surety in the ordinary form of action, after he has paid the debt for which they were both liable, though he could only recover of him an amount proportioned to the number of sureties, without reference to their solvency. That to entitle him to recover for the proportion of the insolvent sureties, he was bound to institute a suit in equity. It was this inconvenience which it is said in Sherrod v. Rhodes is remedied by the statute cited, that authorizes a court of law to administer the same justice that was previously ob-

tainable.   We are aware that what is there said, can hardly
be considered as a point adjudicated, yet the previous decis-
ion of Young v. Clark shows, that the act shall not receive
a literal construction, where it would defeat the intention of
the legislature ; and that the remedy by motion will lie after
the surety who has been sued, has satisfied the judgment
against him.   It certainly does not require greater liberality
of interpretation than was indulged in the case last cited, to
sustain the decision in fifth Alabama Reports ; and if the one
comes within the equity of the statute, of which we have
no doubt, we think it may be assumed that the other does
also.   We cannot perceive of a single reason which would
require the application of a different rule of damages where
the proceeding is by motion, than if an action of assumpsit
were prosecuted.   This view may suffice to show, that the
complainant had a remedy at law, in which, for any thing
appearing to the contrary, he could have obtained all the jus-
tice he seeks."

It is certainly a rule of very general application, that where
a party has an adequate remedy at law, he shall not be allow-
ed to seek redress in equity.   The right to sue in chancery,
for contribution, was an established head of chancery juris-
diction in the time of Queen Elizabeth, on the plain princi-
ples of natural justice : so that if one of several sureties paid
the whole, or more than his proportion of the debt, he might
compel his co-sureties to pay not only his *aliquot* part, or if
the original debtor, or one of the sureties became insolvent,
each of the solvent sureties was made to contribute to the
obligation thus thrown upon him.   Ultimately, courts of law
entertained actions between sureties, but the court of chan-
cery did not on this account renounce its jurisdiction.   This
tribunal still exercises a concurrent jurisdiction in all cases
for contribution between sureties, and there may be cases in
this State, where, notwithstanding our liberal legislation, it
is alone competent to afford a perfect remedy.   [1 Story's
Eq. 475 ; 1 Spence's Eq. Jur. 661 to 664 ; Wright v. Hun-
ter, 5 Ves. Rep. 792 ; Sheppard v. Monroe, et al. 2 N. Car.
L. Rep. 624 ; Owens v. Collinson, 3 G. & Johns. Rep. 25,
40 ; Mitchell's Adm'rs v. Sproel, 5 J. J. Marsh. Rep. 270.]
These citations are so direct to that point, the it is needless

to add to them, or to amplify this opinion by the employment of further argument. We then conclude, that although the complainant had a remedy at law, he might, if he elected, have sued in equity.

In respect to the second objection to the bill, we are satisfied it was not well taken. It could not have been necessary to make the principal debtor, or the insolvent co-surety a party. No relief was sought as against either of them. True, it was necessary, to entitle the complainant to the full measure of what he sought to recover by his bill, that he should have proved the insolvency of the co-surety, as alledged, and it may be, of the principal also. [McCormack, Adm'r, v. Obannon, 3 Munf. Rep. 484.] But as no consequences prejudicial to them would result from proof of that fact—as the decree could not foreclose to any extent their rights, and the defendants, as the representatives of the deceased surety, would not be prejudiced by making, or omitting to bring them in as parties, the frame of the bill, in this respect, is not obnoxious to a demurrer. Our conclusion then is, that the chancellor erred in dismissing the bill; his decree is therefore reversed, and the cause remanded.