## WHITE vs. BANKS.

1. Sureties have the right to claim contribution from each other, in proportion to the amount paid by each on the common debt; and this right is the result, not of any implied contract between the parties, but of an acknowledged principle of natural justice, which requires that those who voluntarily assume a common burden should bear it in equal proportions.

2. If a surety obtains indemnity, for a consideration paid by him, his co-surety cannot claim the benefit of the indemnity without paying his proportion of the consideration; and if an offer of security be made to them by the principal, upon condition that they should execute a release, which offer is accepted by one, and refused by the other, though the latter would have the right to demand that the proceeds of the securities received should be applied to the reduction of the common debt, yet such proceeds could in no other way inure to his benefit; and the payment would discharge the former from contribution, if it amounted to his proportion of the common debt.

3. A deed of assignment fraudulent on its face as to creditors, is capable of con-

firmation by them; and after the deed has been executed, and the assenting creditors have been paid from the effects assigned, the transaction, as to them, will not be disturbed.

4. A firm made an assignment for the payment of their debts, fraudulent on its face as to creditors, providing that the creditors should, within a specified time, execute the deed and release the assignors, or should receive no part of the proceeds of the trust property, and reserving to the grantors that portion of the proceeds which would have been distributed among the refusing creditors if they had executed the deed. Among the debts thus secured was a note held by the Bank, on which there were two sureties, one of whom executed the deed and released the assignors, while the other refused. The former realized, from the proceeds of the assignment, more than his proportion of the common debt, and applied the amount so received to its reduction. The Bank obtained judgment for the balance of the debt against the other surety, who discharged the same, and then moved for a summary judgment against his co-surety. *Held:*

That he had no claim to contribution under these circumstances.

ERROR to the Circuit Court of Tuskaloosa.
Tried before the Hon. GEO. D. SHORTRIDGE.

MOTION by the defendant in error against the plaintiff, for a summary judgment under the statute, upon the following state of facts:

In the year 1838, the firm of Cummings, Pitcher & Co. made an assignment of their property, in trust for the payment of their debts. The creditors were divided into three classes; and the deed required that they should execute the assignment within a specified time, and release the assignors, or should receive no part of the proceeds of the trust property; it also reserved to the assignors that portion of the proceeds which would have been distributed among those creditors who refused to execute the deed if they had accepted it. At the time of this assignment, the Bank of the State of Alabama was the holder of a certain note, executed by said Cummings, Pitcher & Co., on which the plaintiff and defendant in this motion were liable as sureties; and the assignment placed this debt by name in the first class of creditors. White, the plaintiff in error, executed the deed within the time prescribed, and released the assignors; but Banks, the defendant in error, refused to execute it.

Under this assignment, White, with much trouble and some expense, received about three thousand dollars, which he applied to the payment of the said Bank debt, leaving a

balance unpaid of about fifteen hundred dollars. For this balance the Bank obtained judgment against Banks, which he subsequently discharged, and then made this motion in the Circuit Court, for a summary judgment against White, as co-surety, to recover one half of the amount thus paid by him, the principals being insolvent.

The Circuit Court, upon this state of facts, rendered judgment against White, for one-half of the amount paid by Banks; to which White excepted, and now assigns it for error.

E. W. PECK, ORMOND & NICOLSON and N. HARRIS, for plaintiff in error:

The plaintiff, by becoming a party to the deed of assignment, and releasing the assignors, Cummings, Pitcher & Co., acquired the right to devote the moneys he might receive, under the assignment, in the first place, to protect himself, as one of the sureties of Cummings, Pitcher & Co. As to the creditor, the Bank, he was bound to pay the entire debt; but, as between the defendant and himself, being joint sureties, he was only liable to pay one-half. The right then, to devote the moneys he might receive to his own protection, he acquired upon a good consideration, to-wit: the release of the assignors.

The defendant refused to make himself a party to the deed. He preferred to hold on to the liability of Cummings, Pitcher & Co., to repay him whatever he might be compelled to pay the Bank, as one of their sureties.

The only equity that the defendant acquired, by the plaintiff's becoming a party to the deed, was to have the moneys the plaintiff might receive, under the deed, devoted, in good faith, to the payment of the debt of the Bank, whether sufficient to pay all, or only a part thereof. 2 Story's Eq. 555, § 499; Theobald on Principal and Surety, to be found in 1 vol. Law Library 158, 159, ch. 11, § 283.

The deed of assignment was a proposition, offered to both plaintiff and defendant alike. The plaintiff accepted of the proposition, by complying with the conditions imposed by the deed. The defendant refused. It was no act of bad faith on the part of the plaintiff, towards the defendant, to do this. Can there be any principle of equity, that in such a case entitles the defendant, who refused to accept of this proposition,

to share equally the benefits obtained by the acceptance of the plaintiff? Equally, because, the defendant, notwithstanding his refusal, was entitled to certain equities growing out of the plaintiff's acceptance. He was entitled, as before stated, to have the moneys received by the plaintiff under the deed, applied to the payment of the Bank debt, even to the entire extinguishment of it, if sufficient for that purpose. The plaintiff, however, acquired more than an equity, by becoming a party to the deed; he acquired a specific right to apply whatever he might receive, under the deed, first to the discharge of his half of that debt, and if more than sufficient for that purpose, then the equity of the defendant, as co-surety, would come in and require him to apply what was over for the benefit of the defendant.

One surety has an undoubted right to stipulate, in good faith, for a separate indemnity for himself, and to apply such indemnity in extinguishment of his portion of the joint liability. Thompson et al. v. Adams et al., 1 Freeman's Ch. Rep. (Miss.) 225; Augustus Moore v. Isaac Moore, 4 Hawks' Law and Eq. Rep. 358. These cases show, that if one surety, by some fraud, that is, by some act of bad faith, endeavors to gain, by such stipulation, an advantage over a co-surety, equity will not suffer him to reap the benefit of an advantage thus obtained, but will compel him to share it with his co-surety. In this case it is not alleged, or pretended, that the plaintiff was guilty of any bad faith towards the defendant, by becoming a party to the deed of assignment, or that the defendant has been injured by it; on the contrary, it is manifest, the defendant has been benefited by it.

It was asked, whether the release, executed by the plaintiff to the assignors, on becoming a party to the deed, would be binding on him, the deed being fraudulent as to creditors; and it seemed to be conceded, that if this was the effect of the release, that then there would be no equality between the plaintiff and defendant, and consequently no equity on the part of the defendant to share with the plaintiff in the advantages derived by him in becoming a party to the said deed; and this is no doubt true. Now, that the said release is a valid and operative instrument against the plaintiff, in favor of the assignors, can be shown by the best authorities.

If the assignment is valid as between the assignors and the plaintiff, he having become a party to it, then it follows, that the release is valid. This was the very question decided in the case of Henriquez v. Hone, 2 Edwards' Ch. R. 120, and the decree on this question was affirmed in the court of errors. See 13 Wend. Rep. 243.

The plaintiff, therefore, being bound by his release, there is no equality between him and the defendant. The defendant has his remedy over against Cummings, Pitcher & Co., for all the money he has paid for them; but the plaintiff has no such remedy; his release binds him.

This inequality between the condition and situation of the plaintiff and defendant destroys the only principle on which contribution is enforced. There is, therefore, no principle of natural equity or justice springing out of the case in favor of the defendant; and it is not upon contract, but only on the principles of natural justice, that contribution is, in any case, decreed.

Again; in this case the defendant introduced the assignment for the purpose of showing that the money paid by the plaintiff was derived from it; having thus introduced the deed, and made it evidence, is he in a situation to insist upon the fraudulent character of the assignment? He is a mere creditor at large; whereas, judgment creditors only can attack a deed of this kind for fraud; it does not lie in the mouth of a creditor at large to do so. 4 Johns. Ch. R. 671; 2 ib. 144; 2 Leigh's R. 84; 3 ib. 299, 312; 2 Lomax's Dig. 339.

Again; if the assignees, under an assignment which on its face is fraudulent as to creditors, pay over the proceeds of the assigned property to creditors of the assignor, in pursuance of the assignment, before any other creditors obtain a general or specific lien on the assigned property, the other creditors cannot compel the assignees to account to them for such proceeds. Wakeman v. Grover, 4 Paige 242–3; 6 ib. 577; 5 Ala. 324. Nor can a creditor who has thus received the proceeds from the assignees, in satisfaction of his debt, be compelled to account to a creditor who has afterwards, by the judgment or decree of a court, procured the deed to be declared void.

Furthermore—the defendant stood by in silence, and saw

the assignees engaged in discharging their duties under the assignment, and the creditors who had assented to it incurring expense and trouble in securing the rights supposed to be acquired under it, until it was fully executed; therefore, it would violate every principle of good faith to permit him, after all this, to disturb the trusts thus executed in his presence. He must be held to have acquiesced, as to all the acts of the assignees, performed in good faith, in the execution of the trusts under the deed, before any attempt was made to set it aside in the proper forum; and such is the rule upon which courts of equity act in such cases. Wakeman v. Grover, 4 Paige 42.

P. & J. L. MARTIN, contra:

I. The general rule is, that payments made by the principal, or out of his fund, inure to the benefit of all the securities. Story's Equity, 555, § 499; Theobald on Principal and Surety, (1 Law Lib.,) ch. 11, 158–9; 2 Stewart, 512; 4 New Hamp., 481; 5 ib., 353, and cases there cited; 17 Mass., 464; 16 Ala., 454. There are but few exceptions to this rule; one exception arises, when a surety is fairly counter-secured, as an inducement to him to become bound, for his individual liability, which stipulation is entered into with the knowledge of his co-sureties. 4 Hawks' Law and Equity R., 358. A surety who becomes bound at the instance of his co-surety, is not liable to him for contribution. 1 Law Lib., 159. Every exception looks to the creation of the liability, and must form a part of the res gestae, as between the parties to be affected thereby.

When a payment is made by the principal, whether directly or through one of his sureties, the only question is, whether it was made with the funds of the principal. The principal cannot, by any shift or device, prefer one of his sureties to another, or indemnify one to the exclusion of the other, after the suretyship has been entered into on equal terms, and before payment by them. Nor can any contract made by one surety with the principal, by which such surety obtains the effects of the principal and applies them to the discharge of the common debt, operate as a payment by him for his own benefit to the exclusion of the other surety. These propositions are not denied; but it is contended, that the plaintiff in

error is a purchaser of the effects of Cummings, Pitcher & Co.; that the consideration paid by him was, the release of the principal debtors, whom he discharged by accepting the assignment containing that stipulation; and that the proposition being made to both, and accepted by one, but refused by the other, all the proceeds realized by the former should inure to his own benefit. If this be so, why should he be required to apply all the proceeds to the extinguishment of the common debt? he should only discharge his proportion of the debt, and might hold the surplus as his own private property. But the law is settled, and it is admitted by the counsel for plaintiff in error, that he is bound to apply all the proceeds thus received to the reduction of the common debt; this shows that the property in the proceeds is not changed, but only their control. It is said, that the proposition was made to both and refused by one; but does the refusal by one, and the acceptance by the other, change the title to the effects conveyed? If not, then it is a payment by the principal debtor, and must inure to the benefit of all his sureties. The only inquiry is, from whose effects was the payment made; not, by what means was their control and application secured.

II. The deed of trust is fraudulent on its face, and has no binding efficacy. At the time of its execution, neither Banks nor White was a creditor of Cummings, Pitcher & Co. White never was their creditor; and Banks only became such upon the payment of the judgment rendered against him. He was not in a condition to dispute or interfere with the deed, and might never become so. If it is said, that he might have applied to a court of chancery, *quia timet;* the answer is, that such a step is out of the ordinary course of proceeding, and was equally obligatory upon White; and there is but little credit to be given to White, for signing a fraudulent deed as an excuse for a failure from which he claims a benefit against his co-surety. They both stood precisely in the same relation to their principals; and if White, by a fraudulent combination with them into which Banks would not enter, obtained the control of their effects, and applied them to the discharge of the common liability, how can it be contended that he can make that payment his own?

It is said, that Banks was equally benefited with White,

in the proceeds realized from the assignment. But how can this be, if the payment by White of his half of the debt completely discharged him from liability, while the excess only inured to the benefit of Banks; and if this were true, could not White recover this excess from Banks, as a payment made for his benefit?

Whether or not White is barred by his release, can make no difference. We contend that he is not, upon the authority of Hone v. Henriquez, 13 Wendell's R., 243, if he takes the proper steps for its discharge. But if he is bound, it is upon the ground of his assent to the fraud and participation in it, and this cannot benefit him as between others.

GOLDTHWAITE, J.—Sureties have the right to claim contribution from each other, in proportion to the amount paid by each upon the common debt; and this right is the result, not of any implied contract between the parties, but of an acknowledged principle of natural justice, which requires that those who voluntarily assume a common burden should bear it in equal proportions. Burge on Suretyship, 384; Story's Equity, § 493. It is upon this principle, that sureties are entitled to the benefit of all securities which have been taken by any one of them, to indemnify himself against the principal debt. Theobald on Principal and Surety, ch. 11, § 283; Story's Equity, § 499. This right, it is true, may be affected by circumstances which would render the application of this rule inequitable; as, where one of the sureties, before joining in the bond, stipulated for and obtained security from the principal debtor for his sole benefit, Moore v. Moore, 4 Hawks' Law and Equity R. 358; and upon the same principle, we think it clear, that if one surety should obtain indemnity, for a consideration paid by him, the other could not claim the benefit of such indemnity, without paying his proportion of the consideration. So also, if an offer of security is made by the principal, upon the condition that the sureties should execute a release, the refusal by one to accept the terms offered would not prevent the other from acceding to the proposition; and in such case, although the surety refusing would have the right to demand that the proceeds of the securities received should be fairly devoted to the reduction of the common debt,

such proceeds could in no other way inure to his benefit; and the payment, so far as the right of contribution is concerned, would be considered as made by the paying surety out of his own funds, and if it amounted to his proportion of the debt, it would discharge him from contribution. The offer had been made to all; and there would be no equity in allowing the party who had refused to accede to the proposition, and had paid nothing, to share equally in the indemnity purchased under such circumstances by the other surety.

In the case under consideration, the offer of partial indemnity was made by Cummings, Pitcher & Co., through the medium of the assignment, to both Banks and White. The former refused, and the latter accepted the proposition; and, upon the principle which we have stated, it is clear, that Banks would not be permitted to share equally in the indemnity which White had received, unless the fact of the deed of assignment's being fraudulent upon its face, as it is conceded to be, would have the effect of changing the equities which would otherwise exist between the parties.

Our first impression was, that this circumstance would have that effect, and that the refusal of Banks to become a party to a deed of this character, could not deprive him of any right of contribution, as against the other surety; but, upon more mature consideration, we are satisfied that such is not the law. The deed is only fraudulent as to creditors, but is capable of confirmation by them; and it is clearly deducible from the authorities of this State, as well as of other States, that after the deed has been executed, and the creditors who assented to its provisions have been paid from the effects assigned, the transaction, as to them, will not be disturbed. The assignee, who must, as the deed is fraudulent on its face, be regarded as having notice, cannot be held responsible, either in law or equity, after he has executed it—Wakeman v. Grover, 4 Paige 23, 42; Hazard v. Franklin, 2 Ala. 349; and if a creditor cannot, after the execution of such a deed, hold the assignee responsible, *a fortiori* the same rule of protection must apply to the parties whom the deed was intended to secure.

Under the influence of the cases cited, after White had received the proceeds of the assignment, no creditor could have pursued it with success; and the principle being settled, that

46

the assignment is valid so far as it has been executed, it is too late for Banks to impeach it.

Neither are there any considerations of natural justice, which should allow Banks to participate equally in this indemnity. Although he refused to assent to the provisions of the deed, he has remained passive and inactive, realizing to a certain extent the benefits of the assignment, by the application of its proceeds to the reduction of the debt upon which he was bound as surety; and after it has been executed, and after he has received all the benefits which can result from its execution, he claims the right to impeach it, as against his co-surety. To allow him to do so, would be contrary to those principles upon which the rights of sureties, as between themselves, depend.

Our conclusion is, that the amount received by White upon the assignment of Cummings, Pitcher & Co. must, under the circumstances disclosed by the record, be considered as his separate indemnity; and as this has been applied to the payment of the principal debt, and exceeds one half of the amount due upon the same, it follows that Banks had no right of contribution as to him, and the ruling of the court below was therefore erroneous.

The judgment must be reversed, and the cause remanded.