## TYUS et al. *vs.* De JARNETTE et al.

1. The principles asserted in White v. Banks, 21 Ala. 705, as to the right of contribution among sureties, re-affirmed, and applied to this case.

2. Complainants and defendant being bound as sureties for one S., to whom defendant was indebted, S. proposed to release defendant from his liability as surety, by giving a new note with other sureties, if defendant would give him a sight draft on his commission merchant for the amount of his indebtedness, or, if he failed to procure defendant's release, that he would then place defendant's notes in the hands of a third person to protect him alone against his said suretyship ; and to this arrangement complainants assented : *Held*, that this was an express waiver on the part of complainants of their right to participate in this indemnity.

3. But the facts that complainants objected to their principal making an assignment for the benefit of his sureties, because it would injure his credit, and agreed that he might procure the defendant's release from his suretyship, if the latter would pay him the amount of his individual debt ; and that defendant then said, in their hearing, that if their principal failed to carry out this arrangement for his relief, he should take measures to secure himself,— are not sufficient to establish a waiver on the part of complainants of their

Tyus et al. v. De Jarnette et al.

legal right to share in any indemnity or security which defendant might obtain.

4. Where a decree in chancery, dismissing a bill as to both of the defendants, was reversed on error, and the complainants held to be entitled to relief against one of the defendants, the costs of the appellate court were apportioned; one half being taxed against the complainants, and the other half against the unsuccessful defendant.

APPEAL from the Chancery Court of Montgomery. Heard before the Hon. JAMES B. CLARK.

THIS bill was filed by Lewis Tyus and Henry D. Holmes against William P. De Jarnette and James T. De Jarnette; and its object was, to obtain participation for the complainants in certain securities which the defendants had procured from one Lewis Simpson, for whom complainants and defendants were co-sureties. The allegations of the bill, in substance, are as follows: That on the 29th April, 1843, complainants and defendants became sureties for Lewis Simpson, on two promissory notes, for $3818 58 each, payable to one Joshua Hightower; that judgment was recovered on said notes, against all the parties thereto, in the fall of 1847; that Lewis Simpson, at the time of the rendition of said judgment and for some time previous, was insolvent, and paid no part of said judgment; and that said judgment was paid by complainants and defendants, each paying one-fourth.

The bill further alleges, that, at the time the parties thus became sureties for said Simpson, each of the defendants was indebted to said Simpson; that Simpson informed complainants of that fact before they signed said notes, and promised them, in order to induce them to become sureties for him, that the amounts due from the defendants to him should be set apart and applied, *pro tanto*, to the payment and satisfaction of said security debt, or should stand as collateral security for its payment; that Simpson informed defendants, before they signed said notes, of this promise which he had made to complainants, and on this understanding defendants signed said notes; that on the 20th July, 1844, said James T. De Jarnette and Simpson had a settlement of their accounts, and said De Jarnette was found indebted to Simpson individually in the sum of $292 14, and to the firm of Simpson & Hightower in

the sum of $905 47, for each of which sums said De Jarnette executed his promissory note; that said James T. De Jarnette was also largely indebted to the firm of Simpson & McBride, and on a settlement of accounts with Simpson on the 2d March, 1847, was found indebted to them in the sum of $159 88, for which sum he also executed to them his promissory note; that on the 22d December, 1846, said Simpson and William P. De Jarnette had a settlement of their accounts, and said De Jarnette was then found indebted to Simpson in the sum of $1420 30, for which he executed to said Simpson his promissory note.

The bill further alleges, that in February, 1847, the defendants, by some means unknown to complainants, and without their knowledge or consent, induced said Simpson to place the notes which he held on them in the hands of E. G. Carew, W. W. Jackson, and John Golson, for the especial benefit and protection of the said defendants against their liability as sureties for him,—"saying to said Carew, Jackson and Golson, that he gave up to them all claim or title he held in these notes, and that they should deliver them to the said Wm. P. and James T. De Jarnette, to each his own note, when they arranged their proportional parts of said security debt to Hightower"; that after the defendants paid their respective proportions of the said judgment, as above stated, they called on Carew, Jackson and Golson, and received from them their said notes, which had been deposited with them by said Simpson as aforesaid, and that they have disposed of said notes and converted them to their own use. Complainants insist, that they are entitled, by reason of their being co-sureties with defendants, to share in the partial indemnity afforded by these notes; and they therefore pray for an account of the proceeds of said notes, to be apportioned equally among themselves and the defendants, and for general relief.

The defendants answered separately, but their answers are substantially the same. They admit, that they became co-sureties with complainants for said Simpson, on his notes to Hightower; that judgment was afterwards recovered on these notes against all the makers, and that this judgment was paid as charged in the bill; that Simpson was insolvent, and paid no part of said judgment; that they were indebted to Simp-

son at the time they became sureties for him, and that they afterwards had a settlement of their accounts with him, and gave him their notes for the balance found against them; that those notes were afterwards deposited by Simpson with Carew and others, for the separate indemnity of defendants against their liability as sureties for him, and that they received these notes, as charged in the bill, after they had paid their respective portions of said judgment.  They deny that Simpson ever promised complainants, as alleged in the bill, that the amount of their indebtedness to him should be applied towards the payment of said security debt, or should stand as collateral security for its payment; and allege, that if any such promise was made by Simpson, they never had any knowledge or notice of it, until long after their notes, which Simpson had deposited with Carew and others, had been delivered up to them.  They allege, that Simpson, at the time he requested them to become sureties for him on his notes to Hightower, promised them that he would not call on them to pay the amount of their indebtedness to him until the last one of his notes to said Hightower fell due, and that their indebtedness to him should stand as a separate indemnity for them against liability on the notes to Hightower.

They allege, also, that some time after they had become sureties for said Simpson, they became uneasy about their liability on his account, and an interview on the subject was had between complainants, Simpson, and James T. De Jarnette, (the latter acting for himself and his co-defendant,) at Simpson's store; that Simpson told them at this interview that he was fully able to pay said notes to Hightower, and that there was no danger to be apprehended by them ; that complainants, upon this information being given, objected to Simpson's making an assignment to secure them, because it would injure his credit, and said that they were not uneasy ; that James T. De Jarnette stated that he was uneasy about his liability, and insisted that Simpson should either secure him and his co-defendant, or should release them from their liability on the notes ; that Simpson then proposed to release defendants from their liability on his notes, by giving new notes with other sureties in their stead, if they would give him a sight draft on their commission merchant in Mobile for the amount

of their indebtedness to him, and that, if he failed to procure their release, he would then deliver up to them, for their separate indemnity and protection, the notes which he held on them; that complainants assented to this arrangement, and that James T. De Jarnette accepted it on behalf of his co-defendant and himself; that Simpson failed to procure defendants' release from liability on the notes within the specified time, and afterwards deposited the notes which he held on them with Carew and others, in pursuance of said agreement, for their separate protection against liability on his notes. They insist that they had a perfect right thus to secure themselves, and that complainants have no claim on them for contribution.

Simpson, who was examined as a witness by both parties, testified, "that he did not promise complainants that the notes of said defendants should stand as collateral security for all the sureties on the notes to Hightower, but recollects that he told complainants, in a conversation had with each one separately, that defendants would owe him about $5,000, and that Holmes would owe him upwards of $400, and that they were all to be indulged until the last note fell due of the Hightower debt; that this conversation was had before the notes were signed, and that the defendants did not know of said conversation." He gives the following account of the interview between the parties at his store: "That complainants and defendant James T. De Jarnette met at his store in Vernon to make some arrangement to have themselves indemnified on account of their liability on said notes to Hightower; that he does not recollect having made any definite statement to them of the condition of his affairs; that he made a proposition to them, that if said defendants would pay their liabilities to him, he would release them from the notes to Hightower, and would get other names instead of theirs to go on said notes with complainants, and thus reduce the liability of each of the complainants on said notes to about $800; that he was to have four or five weeks to effect this arrangement; that all parties assented to this proposition, and complainants expressed themselves better satisfied with this arrangement than they would be with an assignment; that said James T. De Jarnette then said, in the presence of complainants, that if

this arrangement could not be carried into effect, then he would take measures to have himself secured; that he expressed himself uneasy about his own and his brother's liability on the notes to Hightower, to which complainant Holmes replied, that he did not feel uneasy."

James T. De Jarnette was examined as a witness for his codefendant, and testified to the same facts, in relation to what occurred at the interview between the parties at Simpson's store, which he had stated in his answer.

Carew was also examined as a witness by the defendants, and proved the conditions on which he received their notes from Simpson, and subsequently delivered them on the performance of those conditions.

On final hearing, on bill, answers, and proofs, the chancellor dismissed the bill; and his decree is now assigned for error.

T. WILLIAMS, for the appellants:

1. It is not necessary to make the principal debtor a party, when he is insolvent; nor to make an insolvent co-surety a party.—Couch v. Terry's Adm'rs, 12 Ala. 225.

5. A surety, who pays the debt of his principal, is not entitled to contribution from his co-surety, when he owes the principal debtor more than he paid as surety.—Fitzpatrick v. Hill, 9 Ala. 783; Bezzell v. White, 13 ib. 422.

3. But a surety is entitled to the benefit of all securities, or liens, taken by the principal creditor.—Brown v. Lang, 4 ib. 50.

4. So, also, a surety is entitled to share with his co-surety in all securities and liens which he may obtain from the principal debtor.—Fagan v. Jacock, 4 Dev. 263. The case of Moore v. Moore, 4 Hawks 358, is on the express ground, that the co-sureties had not engaged in the same common risk.— Gregory v. Murrell, 2 Ired. Eq. 233 ; Kerns v. Chambers, 3 ib. 576 ; Hall v. Robinson, 8 Ired. L. 56 ; Bachelder v. Fish, 17 Mass. 464; Low v. Smart, 5 N. H. 353.

5. A principal and a co-surety cannot make any contract or agreement for the benefit of one co-surety, to the prejudice of another.—Hall v. Robinson, 8 Ired. L. 60. And therefore, where one co-surety, after having paid his share of the principal debt, sues the principal in his own name, and recovers,

his co-surety is entitled to contribution in the amount obtained on that recovery.—Doolittle v. Dwight, 2 Metc. 561.

6. The debts due from the De Jarnettes to the principal debtor were due and owing at the time the parties met, in order to get security from Simpson, to-wit, in February, 1846; and as such the complainants had an existing equity in having those debts applied to the general discharge of the sureties. No agreement by them to surrender this right or equity to the De Jarnettes, without consideration, was binding; and it is not pretended that any consideration passed between the parties.

7. There never could have been the agreement pretended by the defendants; for the time when the agreement is said to have been made was prior to the date of the note, in December, 1846.

8. But there is no such proof as to James T. De Jarnette, and no equity passed to him by an assent for Wm. P. De Jarnette's benefit, if any such assent was given.

9. If defendants had paid the whole debt, and filed their bill for contribution, Holmes and Tyus would only be required to contribute a portion of the excess above the amount of their indebtedness to Simpson.—Bezzell v. White, 13 Ala. 422.

10. There is no evidence that Simpson had the power to secure by making an assignment; no proof of what he had to assign.

N. HARRIS, *contra:*

1. The agreement under which the notes of the appellees were placed in the hands of Carew and others was not a transfer of the notes as collateral security: it was an agreement on the part of Simpson, the principal debtor, to repay to the appellees the amount they might pay for him in a particular manner. It is clear that a debtor has the right to prefer one creditor to another. The appellants and appellees, the very moment they paid their respective proportions of the debt for which they were bound for Simpson, became creditors to the extent of their respective payments, and Simpson had the right to repay any one of them the amount of his payment; and if such repayment was made for the exclusive benefit of the surety to whom it was made, the other co-sureties had no

claim whatever upon him for contribution. If Simpson had retained in his possession the notes of the appellees until they had paid the amount for which they were bound as his sureties, and then delivered to each one his note in repayment of the sum so paid by him, it is clear that the appellants would have had no right whatever to call on the appellees for any part of this amount; and this being so, does the fact that Simpson parted with the possession of the notes before the money was actually paid by the appellees, and directed the persons to whom they were delivered to deliver them to the appellees respectively when they should have paid their proportions of the security debt, change the principle, and give the appellants a claim in equity against the appellees which they would not have had if Simpson had retained the notes until the debt was actually paid? No reason is perceived why the principle should be different in the two cases. If the appellees had paid Simpson the amount of their indebtedness to him, and he had retained the money until after they had paid their respective proportions of the debt for which they were bound as his sureties, and then paid it back to them in repayment of the amount which they had paid for him, the appellants certainly could not have called on them for contribution. How, then, can it be insisted, that because the appellees gave Simpson their notes for the amount of their indebtedness to him, and he placed these notes in the hands of others, to be delivered back to them when they paid their respective portions of the security debt,—that therefore the appellants are entitled to contribution in these notes?

2. The right of contribution among sureties does not depend on any implied contract, but is the result of an acknowledged principle of natural justice, which requires that those who voluntarily assume a common burden should bear it in equal proportions.—White v. Banks, 21 Ala. 705. Whenever, therefore, in any case, a fact or circumstance exists, which would render it inequitable or unjust for one surety to call on another for contribution, the right to contribution does not exist; and whenever the right of contribution does not exist, the person deprived of it can have no claim upon any collateral security which a co-surety may have obtained for his own indemnity. The cases of White v. Banks, *supra,*

Thompson v. Adams, 1 Freeman's Ch. R. 228, and Moore v. Moore, 4 Hawks 353, show in what cases a surety has no right to participate in a collateral security received by his co-surety. Even supposing that the appellees' notes were placed in Carew's hands as collateral security only, the appellants, by their conduct, have lost all right to participation in that fund. In fact, they may be justly considered as having assented to the notes being placed in Carew's hands for the appellees' sole benefit. It would be inequitable and unjust, after the appellants had prevented the principal debtor from making an assignment which would have protected all his sureties, to allow them now to come in and participate in a fund which the appellees have secured for themselves by their own exertions.

3. The agreement between Simpson and the appellees, made at the time they became his sureties, which is set up in the answers, and fully established by the testimony of Simpson, shows that the appellees' indebtedness to him should be a fund for their indemnity against liability for him, and comes within the principle of Moore v. Moore, *supra*. Any one, on becoming surety for another, may stipulate for a separate indemnity; or, after becoming bound, sureties may renounce all benefit in a security received by a co-surety.—Long v. Barnett, 3 Ired. Eq. 631. The case of Doolittle v. Dwight, 2 Metcalf, cited by appellants' counsel, does not decide the principle contended for : the recovery in that case was upon a joint cause of action for both sureties.—p. 569.

GOLDTHWAITE, J.—In White v. Banks, 21 Ala. 705, we held, that the right of contribution among sureties was not founded on contract, but was the result of a general equity on the ground of equality of burden and benefit; and this equity, as it is based alone on the duties of the parties arising from the peculiar situation they occupy to each other, is not affected by any agreement or arrangement made by one with the principal for his individual benefit, during the existence of that relation. Hence, the mere fact that indemnity was obtained by one surety, upon an understanding with the principal creditor that it should be used solely for his protection, would not prevent his companions from sharing in it on equi-

table terms. We held, however, in the same case, that as this rule was founded on principles of natural justice, courts would not enforce it when the circumstances of the case rendered its application inequitable.

Applying this doctrine to the present case, the only question is, whether such a state of facts is made out by the evidence, as should take it out of the general rule, and bring it within the exception. The answers deny that the debts which were received by the appellees as separate indemnity, were to be held as collateral security for the principal debt; and the evidence of the witness Simpson shows, we think, very clearly, that there was no such agreement. James T. De Jarnette, who was examined as a witness on the part of the appellee Wm. P. De Jarnette, states that, after the parties had become sureties, the principal debtor told him, that he had promised Wm. P. De Jarnette that the amount owing by him (about fourteen hundred dollars) should be held as collateral security until the principal debt was due; and if William P. De Jarnette had anything to pay, it would not exceed that amount. Conceding for argument's sake the competency of this testimony, it certainly does not tend to establish any agreement, or understanding, that the other sureties were to look to this debt, as indemnity for themselves. If anything, it tends to prove that, if Wm. P. De Jarnette paid, as surety, the amount of his indebtedness to Simpson, he could, as that debt was to be indulged until the principal debt fell due, look to it to reimburse himself. There is no evidence tending to establish the charge that the debts owing by the appellees were agreed to be held as security for the benefit of all; and as the testimony clearly establishes they were received by the appellees as the separate indemnity of each, the only question, as we have said, is, whether under the circumstances the appellants are entitled to share in them. As to Wm. P. De Jarnette, it is shown clearly, that the appellants consented, that if Simpson failed to make the arrangement proposed by him, and assented to by all the parties, then he might receive his own notes for his separate indemnity. This was an express waiver, on the part of his co-sureties, of their right to participate in such indemnity, and we must hold them bound by it. If it were otherwise, a party might be

lulled into a false sense of safety by the act of his companions, and thus be prevented from effectually protecting himself by obtaining additional security. There are many cases in which an equity can be waived or discharged by parol (Walker v. Walker, 2 Atk. 93 ; Lake v. Lake, Amb. 126 ; Roe v. Popham, Doug. 24 ; Price v. Dyer, 17 Ves. 356) ; and the same principles of natural justice, which create the equity of contribution between co-sureties, would discharge it, when the parties themselves expressly consented to waive it.

As to the other party, James T. De Jarnette, there is more difficulty. The just application of the principles we have just asserted requires, that the waiver of a surety to his right of contribution should be fully and clearly established by the evidence ; and our first impression was, that the testimony was sufficient on this point as to both of the appellees ; but more mature consideration has satisfied us, that our conclusion in this respect was wrong, and that as to James T. De Jarnette the facts established by Simpson, who is the only witness so far as he is concerned, do not prove a waiver of their equity on the part of the appellants. That the appellants were opposed to Simpson's making an assignment for the protection of all the parties, for the reason that it would injure his credit, is entitled to no weight upon the question we are now discussing. It tends to show that they were not so much alarmed as to their situation as the other party, and not so eager to obtain indemnity ; but it cannot be fairly regarded as any evidence of an intention on their part to relinquish rights to which they were by law entitled,—the more especially as another proposition was made, to which they all consented, and which left the relative equities of all precisely as they were. Independently of this evidence, the only fact we can look to, as even tending to establish the waiver, is, that the appellants made no objection, when James T. De Jarnette said, in their hearing, that if Simpson failed to carry out the arrangement which was to relieve him, he should take measures to secure himself, and that when he expressed his uneasiness as to his situation, Holmes replied, that he did not feel uneasy. This is not enough to satisfy us clearly, that the appellants intended to waive any of their legal rights. There is no proposition of this kind made. What was said amounts

to nothing more than a mere declaration of intention on the part of one surety, in a certain event, to secure himself, made, apparently, without reference to the assent or dissent of his companions, and not naturally calling for an answer from them. Indeed it does not even appear that the remark was addressed to them.

It is most probable, we agree, that by this declaration he intended to express his intention of obtaining separate indemnity, and the other parties may have so understood him ; but we cannot say this, speaking from the testimony alone, with any degree of certainty. They may have supposed that he intended to secure himself by obtaining full indemnity for the debt. The rule in relation to admissions, to be inferred from acquiescence in the verbal statements of others, should be applied with great caution ; "and it must plainly appear that the language was fully understood by the party, before any inference can be drawn from his passiveness or silence, and must be such as would properly and naturally call from him some reply."—Greenl. Ev. §§ 197, 199. We have found no case which has gone so far as to interpret mere silence, or such an answer as was given by Holmes, in a case like the present, into a consent to give up a right, and should regard it as unsafe and dangerous to establish such a precedent. Our conclusion is, that the evidence fails to establish any discharge of the equity of the complainants below as to the indemnity received by James T. De Jarnette, and in that they must be allowed to participate.

The decree must be reversed, and the cause remanded. But as to the costs in this court, as the decree has been impeached as to Wm. P. De Jarnette, we think it right that the appellants, as they have failed in the ground taken in respect to him, should pay half the costs ; the other half must be taxed against James T. De Jarnette.