(132 So. 177)

**SCOTT v. McGRIFF.**
**6 Div. 557.**

Supreme Court of Alabama.
Oct. 16, 1930.

Rehearing Denied Nov. 28, 1930.

Further Rehearing Denied Jan. 29, 1931.

Richard D. Gilliam, Jr., of Birmingham, for appellant.

R. DuPont Thompson and Walter S. Smith, both of Birmingham, for appellee.

**BROWN, J.**

This is an action by one indorser on a promissory note against another to enforce contribution. The trial was before the court without the intervention of a jury, resulting in a judgment in favor of the plaintiff.

The material facts, to state them briefly, are that the plaintiff McGriff, C. F. Rhodes, one Boone, and the defendant formed and incorporated the "Alabama Rink Corporation," with an authorized capital of $3,000, divided into shares of $100 each. Each of the corporators subscribed 7½ shares, paying cash therefor. The purpose of the corporation was to construct, equip, and operate a skating rink in the fairgrounds in or near the city of Birmingham.

The capital of the corporation was not sufficient for the construction and equipment of the necessary buildings, and the corporation borrowed from the Ensley National Bank, the sum of $6,500, for which it executed its promissory waiver note, indorsed by McGriff, Scott, and Rhodes; McGriff in the meantime having acquired the shares of the capital stock originally subscribed for by Boone.

The corporation failed to pay the note at maturity; the interest was paid from time to time and renewal notes given, which were indorsed by the same parties.

Finally the plaintiff, McGriff, who was the president of the corporation, paid the indebtedness in full, and the last note was indorsed to the plaintiff by the bank "without recourse."

This action is to recover one-half of the sum so paid with interest; it being alleged that Rhodes, the other indorser, is insolvent.

The money paid in as the capital stock of the corporation, and the money borrowed was used in acquiring a ten-year lease on the rink site and in constructing and equipping the building, approximating in cost $10,000.

After this suit was filed, the plaintiff acquired from the defendant and Rhodes the capital stock held by them, and traded the entire capital stock, carrying all the rights of the corporation, to one Harvey, for 400 acres of land which Harvey conveyed to plaintiff.

In the trade, the land was valued at $40 per acre, and was incumbered by a mortgage for $4,000, which was assumed by the plaintiff, leaving an equity of $13,600, which plaintiff's testimony goes to show was worth 50 per cent. of that amount.

The plaintiff testified that nothing was said by him in the trade with Harvey about releasing the corporation from the debt then due him, but he testified that he paid other obligations of the corporation due on some of the equipment, after the sale to Harvey; and his evidence further tends to show that he made the trade to reimburse himself for the losses which he had sustained by having to pay the note. He paid nothing to the defendant or Rhodes for their stock.

It is well settled that at law, as well as in equity, the question of contribution between sureties is to be settled on principles of equity and natural justice; the law courts administering the relief as upon implied contract arising out of the equitable obligation. Douglass v. Orman et al., 218 Ala. 563, 119 So. 605; Couch v. Terry's Adm'rs, 12 Ala. 225; Broughton v. Wimberly, 65 Ala. 549; Washington, Adm'r, v. Norwood, 128 Ala. 383, 30 So. 405.

This principle is applicable to indorsers who are jointly and severally liable on the obligation of their principal. 13 C. J. 832, § 26.

It follows, therefore, that contribution will not be enforced at law or in equity, if the party seeking to enforce contribution is not equitably entitled thereto. White v. Banks, 21 Ala. 705, 56 Am. Dec. 283; Tyus et al. v. De Jarnette et al., 26 Ala. 280; Pegram v. Riley, 88 Ala. 399, 6 So. 753.

Harvey, so far as appears, had no knowledge of the indebtedness due from the corporation to the plaintiff, and the conclusion is irresistible that it was plaintiff's intention to transfer the corporation to Harvey unincumbered by the liability on the note, effecting a release of the defendant from the secondary liability. 21 R. C. L. 1065, § 107; Scott v. Scruggs, 95 Ala. 383, 11 So. 215.

In trading the entire capital stock of the corporation, carrying as it did the right to control the corporation in the management of its property and business, it would clearly be inequitable for the plaintiff to retain the land acquired by him in the transaction, and at the same time compel the defendant to pay to him any part of the original debt due from the corporation to the plaintiff on account of the payment by him of its debt. Owen v. McGehee et al., 61 Ala. 440.

The judgment of the circuit court is reversed, and one here rendered in favor of the appellant, the defendant in the circuit court.

Reversed and rendered.

**On Rehearing.**

The conclusion and judgment of this court, that appellee was not entitled to enforce contribution against his coindorser, is rested upon the evidence showing that, in the trade by appellee with Harvey, it was his purpose to pass to Harvey the corporate property as well as its entire capital stock unincumbered by the debt which appellee held against the corporation, thereby discharging the corporation from liability and effecting a discharge of appellant, its indorser on the note then held by appellee.

346

■ There is no principle better settled than that a discharge of the principal debtor from liability necessarily discharges his sureties or indorsers. This proposition is not controverted, and cannot be.

The testimony of appellee, quoted in his application and reproduced below, shows without dispute that it was the intention of the parties that Harvey was to take the corporation and its property discharged of its debts:

"I think Mr. Harvey was about as glad to trade as I was. Both of us had a sinking ship; he had a mortgage of $4,000.00 that he couldn't handle, *and I had a skating rink* that was a liability to me, and we agreed to swap even, and I take his debt of $4,000.00 and he to take my skating rink, and we were both happy. I think it is a gamble as to whether this land is worth anything over and above the $4,000.00 indebtedness. It was just a trading proposition, in which both of us were trading fictitious values in a way. I have never had a bona fide offer for that land." (Italics supplied.)

No one can read this statement and reach any other conclusion than that appellee intended to trade the corporation and its holdings for the land and its burden.

Appellee, McGriff, was then the creditor of the corporation holding the note indorsed by appellant and two others, and he had the right to discharge the corporation from liability, but he could not do this without discharging appellant, who was a mere indorser on the note, a secondary liability only, which falls with the primary liability.

■ The rule that the finding and conclusion of the trial court on testimony given ore tenus will be accorded the weight of the verdict of a jury, and will not be disturbed unless contrary to the great weight of the evidence, is without application, where the evidence is without dispute and but one conclusion can be drawn from it. Bowling v. State, 204 Ala. 405, 85 So. 500; Marsh v. Elba Bank & Trust Co., 205 Ala. 425, 88 So. 423.

Application overruled.

ANDERSON, C. J., and SAYRE and THOMAS. JJ.. concur.