In re CONECUH PINE LUMBER & MFG. CO.

(District Court, M. D. Alabama, N. D.   June 23, 1910.)

1. CORPORATIONS (§ 657*)—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE —WHAT LAW GOVERNS.

Where a foreign corporation contracted for the manufacture and delivery to it for resale of 3,000,000 feet of lumber in Alabama, the contract being executed and the intention being that it should be performed there, it was governed by the Alabama law.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2553; Dec. Dig. § 657.*]

2. CORPORATIONS (§ 643*)—FOREIGN CORPORATIONS—COMPLIANCE WITH STATE LAW—RETROACTIVE OPERATION.

Compliance with the laws of Alabama relating to foreign corporations authorized to do business within that state is not retroactive, so as to validate a prior contract otherwise void under section 232 of the Alabama Constitution, forbidding corporations not having so complied with its laws from doing business in that state.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 2545; Dec. Dig. § 643.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. CORPORATIONS (§ 657*)—FOREIGN CORPORATIONS—DOING BUSINESS IN STATE—VOID CONTRACT.**

　　Under section 232 of the Alabama Constitution, forbidding any foreign corporation to do any business in the state without having at least one known place of business and an authorized agent or agents therein, and statutes passed in conformity therewith, making the doing of any business in the state without compliance with the Constitution and statutes illegal, and forbidding it under a penalty, a contract between a resident and a foreign corporation, executed and intended to be performed in Alabama, was not only contrary to the public policy of the state, but illegal, and would not be enforced, under the rule that, where a contract is illegal, the courts will leave the parties where they find them.

　　[Ed. Note.—For other cases, see Corporations, Cent. Dig. 2540; Dec. Dig. § 657.*]

**4. COMMERCE (§ 40*)—INTERSTATE COMMERCE.**

　　A contract made in Alabama for the purchase and sale there of 3,000,000 feet of lumber to a foreign corporation, the buyer to inspect and accept a delivery there, did not constitute interstate commerce, though the buyer intended thereafter to ship the lumber outside the state.

　　[Ed. Note.—For other cases, see Commerce, Cent Dig. § 29; Dec. Dig. § 40.*]

In the matter of the Conecuh Pine Lumber and Manufacturing Company. On petition to review a referee's decision disallowing the claim of the Parsons-Willis Lumber Company. Affirmed.

Oates & Oates, for claimant.

Steiner, Crum & Weil, and Ball & Samford, opposed.

JONES, District Judge. The Constitution (Const. Ala. § 232) forbids any foreign corporation to do "any business in this state, without having at least one known place of business, and an authorized agent or agents therein," and statutes passed to give effect to the constitutional provision make the doing of any business in this state, without compliance with the Constitution and statutes, illegal, and forbid it under a penalty.

The Parsons-Willis Lumber Company, hereafter called the "Lumber Company," is a Kentucky corporation, and the bankrupt, the Conecuh Pine Lumber & Manufacturing Company, is an Alabama corporation. On the 21st day of June, 1905, the two corporations made a contract in Kentucky, to be executed in Alabama, whereby the bankrupt agreed to cut 3,000,000 feet of timber from lands controlled by the bankrupt in this state, and manufacture it into lumber, and deliver it at stated times, at an agreed price per thousand, at a point near Elmore Station, in this state, where it was to be received and inspected by the Lumber Company, and stacked by the bankrupt, which also bound itself to load the lumber on cars whenever required by the Lumber Company for shipment elsewhere. The Alabama corporation received $10,000 cash advance, and the promissory note of the Lumber Company for $5,000, on the making of the contract, in accordance with its terms, and agreed to begin the delivery of the lumber by the 26th of June, 1905, at the rate of three or more car loads per week, at the option of the Lumber Company,

until the 3,000,000 feet were delivered. The parties commenced the execution of the contract in Alabama at the stated time. At that date the Lumber Company had not complied with the laws of this state regarding the doing of business by foreign corporations, but did so on the 14th of October, 1905, by the filing of the proper papers with the Secretary of State. The Conecuh Pine Lumber & Manufacturing Company was adjudicated a bankrupt on the 14th of June, 1907. At that time it had delivered only 1,673,877 feet of the 3,000,000 contracted to be delivered, and the Lumber Company thereupon filed its claim against the bankrupt estate for the failure to deliver the quantity of lumber contracted for, and also for certain special damages alleged to grow out of the breach of the contract.

The intention of the parties was that the contract was to be executed in Alabama, and there was performance here, and the law of this state must govern. Diamond Glue Co. v. United States Glue Co., 187 U. S. 613, 23 Sup. Ct. 206, 47 L. Ed. 328. The doing of business by a foreign corporation, without compliance with the laws of the state in that regard, was not only contrary to its policy, but was made illegal, and forbidden under a penalty. The courts will not enforce such a contract, directly or indirectly, but leave the parties in the situation in which they have placed themselves, and refuse to aid either. Very clearly, the Lumber Company did business in this state, when it contracted to have timber manufactured into lumber here, and then received, inspected, and stored it in Alabama, where it held it for sale, and sold it from time to time, and shipped it to customers as they directed. It was incorporated to buy and sell lumber, and it exercised its corporate franchises in that regard to the fullest extent in this state. The contract was made, and money advanced under it, and its execution commenced, in Alabama, some months before the Lumber Company complied with the laws of Alabama. Its subsequent compliance with these laws on the 14th of October, 1905, cannot relate back, so as to give validity to that which the law made void at the time it was done. Woods & Co. v. Armstrong, 54 Ala. 150, 25 Am. Rep. 671.

It is earnestly and ably insisted that the contract between the two corporations and the deliveries of lumber under it were so connected with interstate commerce that the provisions of our Constitution and statutes cannot operate upon them. This is easier said than maintained. Wherein were the purchase and sale of the lumber here so connected with interstate commerce as to prevent the operation of the police power of the state, or deprive the state of the authority to prescribe the terms upon which foreign corporations may do business in this state, and the effect upon their contracts, if they do not comply with its laws? How can the fact, if it be a fact, that the Lumber Company, when it entered into this contract, had the intention to sell the lumber so purchased here only to persons in other states, convert what was done at Elmore Station where the lumber was inspected, received and stored for future shipment, into a transaction of interstate commerce? Coe v. Errol, 116 U. S. 517–525, 6 Sup. Ct. 475, 29 L. Ed. 715; Hopkins v. United States, 171 U. S.

592–594, 19 Sup. Ct. 40, 43 L. Ed. 290.   The lumber at that time had not started on an interstate journey in consummation of any interstate sale.   It was not stopped temporarily at Elmore Station, in any stage of necessary interruption of transportation, while on its way to its ultimate destination.   Its destination, when the contract was made and acts done under it, was Elmore Station.   When it was delivered, it was in compliance with the contract, and the legal title and full ownership in the lumber vested and remained in the Lumber Company until divested by a resale of the lumber.   No other person had the legal title to any part of the lumber so delivered, or any equitable right in consequence of any interstate sale of it, which could be enforced against the lumber at Elmore, or against the Lumber Company.

Having reached its destination, and been received in this state, and held here for subsequent resale, the lumber became intermingled with the general mass of property in Alabama, was under the protection of its laws, and subject to local taxation.   Its situs and status are in no way changed because the Lumber Company, when it bought, had the intent to resell and ship the lumber to any one who might buy it for shipment out of the state.   The intent of the foreign corporation to sell what it bought and received here to parties outside of the state could not alter the fact that the corporate acts, by which it purchased, received, and stored the lumber in this state and held it for a resale, were the exercise of its corporate functions in this state, and constitute the doing of business in this state.   Regulations, such as we have here, in respect to the exercise by foreign corporations of their corporate functions in this state, have only an indirect and remote effect upon interstate transactions, and have never been held to amount to forbidden regulations of interstate commerce.   As said in Diamond Glue Co. v. United States Glue Co., 187 U. S. 611, 23 Sup. Ct. 206, 47 L. Ed. 328:

"The foundation of commerce outside of the state was the doing of business within it, and superintendence and manufacture had to come before sale."

Again, as said in Diamond Match Co. v. Ontonagon, 188 U. S. 82–95, 23 Sup. Ct. 266, 271; 47 L. Ed. 394:

"Whenever a commodity has begun to move as an article of commerce from one state to another, commerce in that commodity between the states has commenced; but this movement does not begin until the article has been shipped or started for transportation from one state to the other.   The carrying of them on cars or vehicles, or even floating them to the depot where the journey is to commence, is no part of the journey."

Here the selling of the lumber after it was deposited near Elmore Station, or whether it would go outside of the state, depended on chance or extrinsic business considerations.   It is impossible to distinguish this case from Chattanooga Building & Loan Association v. Denson, 189 U. S. 410, 23 Sup. Ct. 630, 47 L. Ed. 870, Diamond Glue Co. v. United States Glue Co., 187 U. S. 611, 23 Sup. Ct. 206, 47 L. Ed. 328, and General Oil Co. v. Crain, 209 U. S. 211, 28 Sup. Ct.

475, 52 L. Ed. 754. The order of the referee disallowing this claim must be affirmed.

The retaking of testimony on one point, and the misplacing of the record for a long time, by some of the numerous counsel in the case, prevented earlier decision as to this claim.