## Brunner v. Mobile-Gulfport Lumber Co.

### Assumpsit.

(Decided November 7, 1914.   66 South. 438.)

1. *Commerce; Interstate; Collection of Goods at Port for Export.*—Where a foreign corporation bought lumber to be delivered in care of the vessel at Mobile, and there inspected and paid for at a specified price per M., the fact that lumber was purchased for export and intended to be loaded on vessel and continue its transportation to a foreign country, did not render the transaction one of interstate commerce so as to remove it from the operation of the state law providing that foreign corporations shall not do business within the state without complying with its laws.

2. *Sales; Delivery; Reasonable Time; Option.*—Where time for delivery of goods sold is at the option of the buyer, he must exercise his right within a reasonable time, and the seller is entitled to a reasonable time to make delivery after notice.

3. *Same; Pleading.*—The pleadings considered, and it is held that the allegations that plaintiff demanded delivery of the lumber within a reasonable time was a mere conclusion and insufficient, and that the allegation was also defective for failure to allege that defendant failed to make delivery within a reasonable time after demand.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Suit by the Mobile-Gulfport Lumber Company against W. H. Brunner for breach of a contract to deliver lum-

ber. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Amended count 3 is as follows: Plaintiff claims of defendant $100, for that by written contract with defendant, on, to-wit, July 25, 1911, defendant agreed to deliver to plaintiff by October 15, 1911, in care of vessel at Mobile, Ala., and plaintiff agreed to accept on such delivery at Mobile, Ala., 50,000 feet of lumber at $14 per M feet to be inspected at the mills; that by subsequent agreement between said parties said original contract was modified in that defendant agreed to make delivery of said lumber after October 15, 1911, on demand of plaintiff therefor, to be inspected at Mobile, Ala., and that plaintiff agreed to accept said lumber after October 15, 1911, on said delivery by defendant on plaintiff's demand therefor to be inspected at Mobile, Ala.; that after October 15, 1911, and within a reasonable time after said subsequent agreement, plaintiff made demand on defendant for said delivery by defendant of said lumber, and that defendant failed to make said delivery of said lumber on demand from plaintiff therefor to plaintiff's damage, etc.; and that at the time of said demand plaintiff was ready, able, and willing to comply with its part of said original contract as modified by said subsequent agreement, and that upon said delivery of said lumber by defendant plaintiff was ready, willing, and able to pay defendant for the said lumber at said contract rate of $14 per M feet.

LEIGH & CHAMBERLAIN, for appellant. The court erred in overruling the demurrer to the third count of the complaint.—35 Cyc. 181-2; *Davis v. Adams*, 18 Ala. 265; *Brady v. Green*, 159 Ala. 482; *Sloss-Sheffield v. Simpson*, 158 Ala. 590; *Carmelich v. Mims*, 88 Ala. 335. The court erred in overruling demurrers to the first special

replication.—*Davis v. Adams, supra; Brady v. Green, supra; Ware v. Mobile County,* 146 Ala. 163; 209 U. S. 405; 228 U. S. 665; 227 U. S. 505; 116 U. S. 517; 121 N. W. 256. On the same authorities the court erred in overruling demurrers to the second special replication.

FRANK J. YERGER, and ELLIOTT G. RICKARBY, for appellee. The third count was sufficient and not subject to demurrer.—35 Cyc. 181. The contract was an interstate contract.—*Wright v. State,* 63 Ala. 14; 219 U. S. 512; 225 U. S. 110; 227 U. S. 111. These authorities dispose of all the errors insisted upon.

GARDNER, J.—Suit was brought by appellee against appellant to recover damages for an alleged breach of contract for the sale of lumber. The cause was tried on the third count of the complaint, defendant's pleas thereto, and plaintiff's two replications to pleas 2, 3, and 4.

Count 3 set up that by written contract of date July 25, 1911, the defendant agreed to deliver to plaintiff by October 15, 1911, in care of vessel at Mobile, Ala., and plaintiff agreed to accept on such delivery at Mobile, 50,000 feet of lumber, at $14 per thousand feet, to be inspected at the mill; and that by subsequent agreement of the parties this original contract was modified to the extent that defendant agreed to make delivery of said lumber after October 15, 1911, on demand from plaintiff therefor, to be inspected at Mobile, and plaintiff agreed to accept said lumber after October 15, 1911, on said delivery, on plaintiff's demand therefor, to be inspected at Mobile.

There are then averments going to show the breach by failure to deliver the lumber, etc., not necessary to be considered at this stage of the opinion.

The defendant pleaded the general issue, and three special pleas, in substance, that the plaintiff was a for-

[Brunner v. Mobile-Gulfport Lumber Co.]

eign corporation, organized under the laws of some country or state other than the state of Alabama, and had not complied with the laws of this state relative to admitting foreign corporations to do business in this state; it being averred in each of said pleas that the alleged contract sued upon was attempted to be entered into in this state, and was to be wholly performed within the state.

There was no demurrer to these pleas, and no general replication thereto, taking issue on, or denying their allegations; but plaintiff filed to these pleas two special replications. While they are not identical, yet the two replications contain, and are treated by counsel as containing, the same, is substance, to the effect that the lumber contracted for was purchased by plaintiff for delivery in care of vessel at Mobile, Ala., for transportation to a foreign country in said vessel immediately upon delivery of said lumber in care of said vessel, and was so contracted for by plaintiff to fulfill a contract of plaintiff for the delivery of said lumber in said foreign country.

It is thus seen that the insistence of these replications is that the transaction constituted interstate commerce, and was therefore without the influence of the statute sought to be availed of in the special pleas. This is treated by counsel as the question of prime importance on this appeal.

What transactions constitute interstate commerce is a question oftentimes presented to the Supreme Court of the United States, but we will call attention to only a few of the cases we deem more nearly in point, and make but brief reference thereto.

In the case of *Coe v. Errol,* 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715, frequently cited in subsequent decisions, the opinion is prefaced by two questions, as fol-

lows: "Are the products of a state, though intended for exportation to another state, and partially prepared for that purpose of being deposited at a place or port of shipment within the state, liable to be taxed like other property whithin the state? Does the owner's state of mind in relation to the goods—that is his intent to export them, and his partial preparation to do so—exempt them from taxation? This is the precise question for solution."

Continuing, the opinion says, in part: "There must be a point of time when they cease to be governed and protected by the national laws of commercial regulation, and that moment seems to us to be a legitimate one for this purpose, in which they commence their final movement for transportation from the state of their origin to that of their destination. When the products of the farm or the forest are collected and brought in from the surrounding country to a town or station serving as an entrepot for that particular region, whether on a river or a line of railroad, such products are not yet exports, nor are they in process of exportation, nor is exportation begun until they are committed to the common carrier for transportation out of the state to the state of their destination, or have started on their ultimate passage to that state. * * * Though intended for exportation, they may never be exported; the owner has a perfect right to change his mind; and until actually put in motion, for some place out of the state, or committed to the custody of a carrier for transportation to such place, why may they not be regarded as still remaining a part of the general mass of property in the state? * * * Until actually launched on its way to another state, or committed to a common carrier for transportation to such state, its destination is not fixed and certain. It may be sold or otherwise disposed of within

the state, or never put in course of transportation out of the state. Carrying it from the farm, or the forest, to the depot, is only an interior movement of the property, entirely within the state, for the purpose, it is true, but only for the purpose, of putting it into a course of exportation; it is no part of the exportation itself. Until shipped or started on its final journey out of the state its exportation is a matter altogether in fieri, and not at all a fixed and certain thing."

This case is cited approvingly in *Diamond Match Co. v. Ontonagon,* 188 U. S. 82, 23 Supt. Ct. 266, 47 L. Ed. 349; and, after reviewing the above authority as well as others, the opinion states that: "The cases establish that there may be an interior movement of property which does not constitute interstate commerce, though property come from or be destined to another state."

The case of *Bacon v. Illinois,* 227 U. S. 504, 33 Sup. Ct. 299, 57 L. Ed. 615, is also in point and of interest in this connection. Several authorities are there reviewed, including those above cited. Speaking to the facts of the last-cited case, it was said in the opinion: "But neither the fact that the grain had come from outside the state nor the intention of the owner to send it to another state and here to dispose of it can be deemed controlling when the taxing power of the state of Illinois is concerned. The property was held by the plaintiff in error in Chicago, for his own purposes and with full power of disposition."

We make no attempt to here review the cases in detail, nor quote further extracts from the opinion, but cite, in this connection, these additional authorities: *Gulf, Colorado & Sante Fe Ry. Co. v. Texas,* 204 U. S. 403, 27 Sup. Ct. 360, 51 L. Ed. 540; *Susquehanna Coal Co. v. Mayor,* 228 U. S. 665, 33 Sup. Ct. 712, 57 L. Ed. 1015;

*In re Conecuh River Lumber & Mfg. Co.* (D. C.) 180 Fed. 249; *Ware & Leland v. Mobile County,* 209 U. S. 405, 28 Sup. Ct. 526, 52 L. Ed. 855, 14 Ann. Cas. 1031; *Diamond Glue Co. v. U. S. Glue Co.,* 187 U. S. 611, 23 Sup. Ct. 206, 47 L. Ed. 328.

Count 3 of the complaint upon which the suit was tried shows that the delivery of the lumber and the payment of the purchase money was concurrent, dependent obligations; in short a cash transaction (*Brady v. Green,* 159 Ala. 482, 48 South. 807) with delivery of the lumber by the seller at Mobile and privilege of inspection by the purchaser when so delivered at Mobile. The shipment therefore by the seller of the lumber to Mobile was not only for a delivery of same to the purchaser, but also for his inspection. The title to the lumber remained in the seller until inspected, accepted, and paid for by the purchaser. Until this was done, the purchaser had no authority over or control of its disposition. It cannot be successfully contended that under such a contract the lumber had started on its final journey to a foreign country, when placed in the cars by the seller and owner, for shipment to Mobile, to be first inspected by the purchaser and then either accepted and paid for, or rejected. If rejected, then most clearly it is still the property of the seller and remains among the general mass of property of the state subject to the state regulation. Nor can the fact that the purchaser contracted for the lumber with the intention of shipping to a foreign country alter the situation, as is clearly shown by the quotation above given. Such a shipment to Mobile under the contract upon which recovery is sought in this case may be termed what the above authorities might call "an interior movement of the property, for the purpose of putting it into a course of exportation," but no part of the exportation itself. As said in *Coe v. Errol, supra:* "Until shipped or

started on its final journey out of the state its exportation is a matter altogether in fieri and not at all a fixed and certain thing."

Delivery of the lumber by the seller in Mobile, for inspection, and, if accepted, then for sale (the owner intending its shipment to a foreign country if accepted and purchased), would be but preliminary work, performed for the purpose of putting the property in a state of preparation and readiness for transportation, and no more the beginning of its actual exportation than is the assembling at the depot, where the journey is to commence, of the products of the farm, as illustrated in *Coe v. Errol, supra*, a part of that journey.

Many of the decided cases arose over the question as to whether or not the shipment was to be governed by state rates and regulations or by the federal authority, a solution of which, of course, rested upon whether it was a local or an interstate shipment.

We think the correctness of our position may be clearly demonstrated by this simple illustration: Suppose the purchaser here had intended the shipment for a point in the stae of Mississippi. The seller places his lumber on the cars for shipment to Mobile, there to be first inspected by the purchaser and accepted or rejected. When the lumber arrives in Mobile, it is still the property of the seller until inspected and paid for. His bill of lading is for shipment to Mobile only. He may know or expect that the final destination is some point in Mississippi, but with this he is not concerned. The contract of the carrier is with him, and that contract is completed upon delivery of the lumber in Mobile. To move it beyond that point would require the intervention of an entirely new and independent shipment. Clearly, it cannot be contended that this shipment from one point in this state to Mobile, under such circumstances, would

be governed by any interstate rate or rules, and yet, if an interstate shipment, such would of course be the result. As to whether the lumber is to reach a destination beyond this state might depend upon first, its acceptance and purchase by the purchaser, and, then, entirely upon his will or desire.

The appellee seems to rely upon the case of *Texas & N. O. R. Co. v. Sabine Tram. Co.*, 227 U. S. 111. 33 Sup. Ct. 229, 57 L. Ed. 442, wherein the decision of the Court of Civil Appeals of Texas (reported in [Tex. Civ. App.] 121 S. W. 256) was reversed. We have carefully examined this authority, and conclude that it does not militate against the conclusion we have here reached. Indeed, the opinion begins with an allusion to the fact that the Supreme Court of Texas, in its last finding of fact, had declared that: "The shipments in controversy, together with other shipments of lumber to Sabine and Sabine Pass, constitute a large and constantly recurring course of foreign commerce passing out through the port of Sabine."

The effect of the decision, as we understand it, is that the fact that the initial shipment is with local bill of lading will not be given a controlling influence, and that while the transportation should be continuous it need not be by or through the initial carrier, the court looking at and considering the nature of the traffic rather than at what it calls its "accidents," to determine whether it is intrastate or foreign. Under the course of dealing between the parties, it was there held that the shipment by the seller originally was a link in the chain of continuous transportation, and the mere delays incident to the traffic did not destroy the continuity of the shipment. The court had before it no such situation as is presented by the pleadings in this case. The opinion cites, with approval, *Gulf, Colorado & Sante Fe. Co. v.*

*Texas, supra,* and we think that what is said in reference to the facts of that case tends strongly to sustain our conclusion here. We will not repeat the facts; but what is pointed out as one of the controlling circumstances in that case is the fact that not until the corn reached Texarkana did the Hardin Company, the seller, acquire title thereto and control thereof, and that was after the first contract of transportation had been completed, and not until then did it acquire the means of filling its contract.

So, in the instant case, the purchaser acquired no title to nor control of the lumber until it had been inspected, accepted, and paid for, and all this after the first contract of transportation was fully completed.

Further discussion, however, we deem unnecessary. The pleas show that the contract was to be fully performed within this state, and we conclude that the replications were no answer ot the pleas, and that the demurrer thereto should have been sustained.

The contract as modified by the parties, as shown by count 3, stipulated for delivery of the lumber, after October 15th, on demand of the plaintiff. While said count discloses that the original contract called for delivery by October 15th, the modified contract fixed no time therefor, but delivery was to be upon demand of plaintiff.

"When the time of delivery is at the option of the buyer, he must at least exercise his right within a reasonable time, and the seller is entitled to a reasonable time after notice to make delivery, but he cannot delay delivery beyond a reasonable time."—35 Cyc. 182.

Count 3 alleges that demand for delivery was made "within a reasonable time," but this is alleged as a conclusion of the pleader, and we are of opinion that the averment as to time when the demand was made should

have been more specific to meet the requirements of good pleading.—*Central Lumber Co. v. McClure Lumber Co.,* 180 Ala. 606, 61 South. 821; *Continental Jewelry Co. v. Pugh Bros.,* 168 Ala. 295, 53 South. 324, Ann. Cas. 1912A, 657; *Carmelich v. Mims,* 88 Ala. 335, 6 South. 913; *Sloss-Sheffield Co. v. Sampson,* 158 Ala. 590, 48 South. 493; 31 Cyc. 105.

This count also fails to show that the defendant failed to make said delivery within a reasonable time, the averment being that he failed to make said delivery upon demand. It should be shown that such failure was within a reasonable time after such demand.—Authorities, supra; 35 Cyc. 182.

We conclude that the demurrer to the complaint was well taken.

The rulings of the trial court were not in accord with the conclusions we have here reached, and its judgment is therefore reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and MCCLELLAN and MAYFIELD, JJ., concur.