153 So. 646

## HENDERSON v. HENDERSON.

### 6 Div. 372.

Supreme Court of Alabama.
March 8, 1934.

Rehearing Denied April 5, 1934.

Horace C. Wilkinson, of Birmingham, for appellant.

Kelvie Appelbaum and Lee J. Damsky, both of Birmingham, for appellee.

GARDNER, Justice.

The bill is by the wife for separate mainte-nance. Upon submission of the cause for final decree on pleadings and proof, she was denied relief.

At the time of the marriage, on October 17, 1931, she was thirty-nine and the husband forty-eight years of age. She was then earn-ing $40 a week. His earnings were shown at the trial to be $83 per month, out of which he cared for his mother and father in the house in which he lived. The house, how-ever, was not his own, but was in the name of his father, and the husband paid $25 monthly on the home mortgage indebtedness.

Complainant knew something of defend-ant's financial struggle, but it is clear, and we think undisputed, she understood the home in which they were to live with his father and mother belonged to defendant. It is equally well established that it was understood be-tween the two the arrangement of living with his parents was temporary, and it was con-templated that in course of time they would have a home of their own and alone. The separation occurred in August, 1932, some-thing less than ten months after the mar-riage.

Complainant insists that from the conduct of both the father and mother of defendant she was plainly given to understand she had no rights to exercise or privileges to enjoy in the house as a home, and was an unwelcome intruder. In some respects upon the matter of conduct of the parents to complainant, the evidence was in conflict. But we think standing out boldly and indisputably is the fact that defendant's mother entertained a cordial dislike for complainant, and that she was most unhappy in these surroundings, even to the point of having to some degree harmfully affected her nervous system. And from the mother's own testimony, it is plain complainant's return would be an unwelcome event.

But complainant knew at the time of the marriage she would be taken to this home to live, at least temporarily, though she also be-lieved the house was his, and was doubtless ignorant of the fact the husband was the sup-port of his parents. And it is argued that having voluntarily become a member of the household, it was her duty to remain, es-pecially in view of the husband's decreased earnings, his support of his parents, and his inability to sustain a separate household else-where.

There is much in the argument to challenge attention and serious consideration. But we think it overlooks one element of the proof which we are persuaded also escaped the chancellor's notice. The husband knew of his wife's unhappy condition, and appears to have utterly ignored her entreaties to better conditions, that they might live happily to-gether. All the proof tends to show complain-ant's high regard for defendant, and her will-ingness to help render their married life a success. Her letters show with what joy she anticipated this union, and before a complete disillusion, all her appeals to her husband to save them from a matrimonial wreck fell up-on deaf ears. It was his duty to guard her happiness, if it could be reasonably done, and she offered a solution, to the effect that the two occupy one part of the house to them-selves and his parents the other. The house was ample for the purpose, and little expense, if any, of making two apartments was in-volved—merely using one side for themselves. No reason appears why this was not entirely feasible, and it certainly offered a hope for contentment and a continued marriage rela-tionship. Defendant ignored all suggestions. He stood unmoved, with the suggestion if she did not care to live there as it was, she could go elsewhere. She was reluctant to leave him, but he carried her to her sister's in the same city, where she now lives. A reading of the record is persuasive that the separa-tion was a matter of indifference to him, but of pain and disappointment to the wife.

■ We have recognized the husband's right to select his own domicile, but that this right is limited to the extent that it must be rea-sonably and not arbitrarily exercised. Spaf-ford v. Spafford, 199 Ala. 300, 74 So. 354, L. R. A. 1917D, 773. He should do what he can within reasonable and proper limits to make her happy, but each case must be adjudged by the peculiar facts upon which it rests.

Perhaps it could not be expected, under the circumstances here disclosed, that a separate home for the wife be obtained. But we find no explanation of the husband's refusal to provide a separate habitation in the same house where the wife could exercise some rights and enjoy some privileges. In this re-

spect we are persuaded he has fallen far short of his duty, and displayed much indifference to her welfare and happiness. And since the separation, he has made no effort to have her return, or made any advance at reconciliation. Economic conditions are of course to be considered, but should not be made to serve as a cloak for the husband's indifference, nor should they be permitted to disrupt so sacred a union if reasonably to be avoided.

It is insisted, however, that the wife is not without means (citing Higgins v. Higgins, 222 Ala. 44, 130 So. 677; Ex parte State ex rel. Tissier, 214 Ala. 219, 106 So. 866; Brady v. Brady, 144 Ala. 414, 39 So. 237), an argument based upon the assumption that the money deposited by complainant on the day previous to the marriage was her own. But complainant's testimony that the larger portion was that of her mother's, a gift from a son, and which in a few months after the marriage she gave to the mother, is all without dispute. As this was without dispute, and appearing entirely reasonable upon its face, we think complainant's testimony in this regard must be accepted as a settled fact.

True also the husband's earnings are small, but it would seem clear that the claim of his wife for support must be regarded as superior to any duty to make monthly payments on a house not his own. The allowance to the wife may necessarily be very limited, but, however that may be, the facts here presented are not convincing that the husband should be relieved of all responsibility in that regard.

From a position of independence by her own labor, complainant's condition is reversed to one of dependence upon her sister for support, when, as we read the record, the husband had it in his power to have made a suitable provision for her under the same roof and thus have fulfilled his duty as a husband as best he could.

■ We have not overlooked the rule of presumption in favor of the trial court on the finding of facts when the testimony is orally taken, as here. East v. Saks, 214 Ala. 58, 106 So. 185; McClurkin v. McClurkin, 206 Ala. 513, 90 So. 917; Hope of Alabama Lodge v. Chambless, 212 Ala. 444, 103 So. 54. But our conclusion is rested upon facts which appear to be indisputably established, and under such circumstances the rule of course is without application. Murphree v. Hanson, 197 Ala. 246, 72 So. 437; Marsh v. Elba Bank & Trust Co., 205 Ala. 425, 88 So. 423.

We cannot know the present condition of the parties, and a reference should be had to determine the proper amount which complainant should be awarded. Cases of this character are of the most delicate nature, and each must be determined upon its own peculiar facts.

■ The solution of the case is one not free from difficulty, but we are persuaded the husband has failed in his duty, as herein indicated.

The decree will be reversed, and one here rendered to the effect that complainant is entitled to relief, and the cause remanded to be proceeded with in accordance with the views herein expressed.

Reversed, rendered, and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.