52 So.2d 693

**STATE v. MOBILE STOVE & PULLEY
MFG. CO., Inc.**

**I Div. 378.**

Supreme Court of Alabama.

Dec. 14, 1950.

As Extended on Denial of Rehearing
May 24, 1951.

618

A. A. Carmichael, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen., for appellant.

Smith, Hand, Arendall & Bedsole and Thos. G. Greaves, Jr., all of Mobile, for appellee.

LAWSON, Justice.

The State Department of Revenue, entertaining the view that the amount of sales tax paid by Mobile Stove & Pulley Manufacturing Company, Inc., a corporation (hereinafter referred to as the taxpayer), for a period of approximately five years was incorrect, gave notice thereof to said taxpayer, who appeared in protest of any increased assessment. §§ 766, 767, Title 51, Code 1940.

On September 22, 1948, the Department of Revenue made a final assessment against taxpayer of a deficiency of sales tax liability for the period from February 1, 1943, to December 1, 1947, in the amount of $1,-032.11 as tax, plus interest and penalty. Art. 10, Title 51, Code 1940.

The taxpayer, being dissatisfied with the assessment thus finally fixed, prosecuted an appeal to the circuit court of Mobile County, in equity, as authorized by § 768, Title 51, and in the mode prescribed by § 140, Title 51, Code 1940. The procedure followed by the taxpayer to have the assessment of the Department of Revenue reviewed is not questioned. State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342; Merriwether v. State, 252 Ala. 590, 42 So.2d 465, 11 A.L.R.2d 918.

Taxpayer complained as to only a part of the assessment made by the Department of Revenue, as appears from the averments of its bill filed in the circuit court of Mobile County, in equity, the material parts of which are as follows:

"4. Appellant shows unto the Court that said assessment was and is illegal and void, to the following extent: *Included within the gross receipts from sales, upon which tax was assessed by the State Department of Revenue, were receipts totaling $7,009.32 derived by appellant from sales of patterns during the period covered by said assessment. Each of such sales was made to buyers outside Alabama, in interstate commerce.* The tax assessed against such receipt amounted to $140.18 and an appropriate portion of the penalty and interest assessed against the appellant resulted from the assessment of such tax. Appellant denies that its sales of such patterns were subject to sales tax, and denies that any part of its receipts from such sales should have been taken into account in the making of said assessment, for the following reasons:

"(a). The State of Alabama is prohibited from taxing such sales, or the receipts therefrom, under the Constitution or laws of the United States of America and under the Constitution of Alabama.

"(b). No provision of the laws of Alabama provides for the assessment sought to be made with respect to such sales or any part of the proceeds thereof.

"(c). Such sales were made in interstate commerce and are, therefore, not subject to the sales tax assessed." (Emphasis supplied.)

Upon a hearing on appeal in the circuit court, a decree was entered upholding the contention of the taxpayer. In pertinent part the decree reads:

620

"* * * that included within the gross receipts from sales upon which said assessment was based were receipts totaling Seven Thousand Nine Dollars and Thirty-Two Cents ($7,009.32), derived by appellant from sales of patterns; that the facts with respect to such sales are correctly set forth in the appellant's appeal from assessment and such sales are not subject to taxation for the reasons therein assigned; and that the sales tax sought to be assessed with respect to such sales amounted to One Hundred Forty Dollars and Eighteen Cents ($140.18), plus penalty and interest thereon;

"Now, therefore, it is hereby ordered, adjudged and decreed that said assessment is invalid and excessive to the extent of One Hundred Forty Dollars and Eighteen Cents ($140.18), plus penalty and interest thereon, the amount assessed because of said sales of patterns; that said part of said assessment is hereby set aside and declared null and void; * * *."

The State of Alabama has prosecuted this appeal, as authorized by § 140, Title 51, supra.

In § 140, Title 51, supra, is the provision that the assessment made by the Department of Revenue should be deemed, on appeal to the circuit court, to be prima facie correct, and where the appeal is taken by the taxpayer the burden shall be on it to show that such assessment is incorrect. A like provision is found in § 767, Title 51, supra, dealing specifically with the sales tax, the closing sentence being: "Any assessment made by the department shall be prima facie correct upon appeal." See, State v. Mims, 249 Ala. 217, 30 So.2d 673; State v. Levey, 248 Ala. 656, 29 So.2d 129; State v. Pullman-Standard Car Mfg. Co., 235 Ala. 493, 179 So. 541, 117 A.L.R. 498.

Taxpayer sought to meet the burden which was upon it by the testimony of only one witness, namely, Mr. C. S. Latshaw, its president. No witnesses were called by the State.

■■ Counsel for taxpayer argue that the trial court, after hearing Mr. Latshaw's testimony, concluded that taxpayer had met the burden upon it of showing that the assessment was incorrect; that such conclusion was based upon a finding of fact; and that, therefore, this court should indulge every presumption in favor of the ruling of the trial court.

We think no such presumption can be indulged in this case. We are, of course, aware of the well established rule that a presumption should be indulged in favor of the conclusion of the trial judge, who sees and hears the witnesses, when there is a conflict in the evidence. But here there was only one witness and, while his testimony is not too clear in all respects, it does not contain conflicts upon which to base this general presumption. Murphree v. Hanson et al., 197 Ala. 246, 72 So. 437; Bowling v. State, 204 Ala. 405, 85 So. 500; Marsh v. Elba Bank & Trust Co., 205 Ala. 425, 88 So. 423; Scott v. McGriff, 222 Ala. 344, 132 So. 177; Henderson v. Henderson, 228 Ala. 438, 153 So. 646; Wright v. Price, 226 Ala. 591, 147 So. 886; Barnes et al., v. Clark et al., 227 Ala. 651, 151 So. 586, 90 A.L.R. 637; Hamilton et al. v. James, 231 Ala. 668, 166 So. 425; Esco v. Davidson, 238 Ala. 653, 193 So. 308; Turner v. Turner, 251 Ala. 295, 37 So.2d 186.

Since no presumption is to be indulged in favor of the findings of the trial court, it is our duty on this appeal to determine whether the testimony of Mr. Latshaw is sufficient to overcome the presumption of correctness of the assessment of the Department of Revenue.

As before indicated, the only evidence in this record as to the transactions out of which the taxpayer received the sum of $7,009.32, on which the disputed tax was based, is the testimony of C. S. Latshaw, taxpayer's president.

Taxpayer is an Alabama corporation with its principal office and place of business in Mobile. During the period covered by the assessment, it was engaged in the business of operating an iron and steel foundry and machine shop, where it produced heavy castings, such as stern frames, anchor windlasses, etc., used in the construction of boats and ships.

The heavy castings could not be manufactured without the use of forms known

to the business or trade as "patterns." The part which "patterns" play in the manufacture of castings is described by Mr. Latshaw as follows: "A pattern is a form that has to be manufactured before we can make a casting in the mold. Whatever shape we put in the sand that is the shape of the final product, and they have to be made of wood or plastic, whatever the case may be. * * * Well, in order to make a casting you first have to have a pattern, to get it in the mold, and whatever shape that is, of course, that is the shape of the [sic] casting comes out. * * *"

Taxpayer maintained a pattern shop or department for the manufacture of patterns. The patterns were made according to the customer's specifications and blueprints.

The $7,009.32 received by taxpayer during the period covered by the assessment and upon which the disputed tax was computed, was paid to it by out of state customers for the manufacture of patterns, which patterns were used by taxpayer in the production of castings for these customers. The castings produced from the patterns were shipped to the purchasers in other states. The patterns are still in the possession of taxpayer in Mobile County. It does not appear that the State sought to collect a sales tax based on the receipts from the castings shipped to the out of state buyers.

Mr. Latshaw's testimony is far from complete as to the transactions here involved. But we think it supports the inference that the general course of conduct of that part of taxpayer's business with which we are here concerned was as follows: A prospective purchaser of castings submitted specifications and blueprints as to patterns needed for the manufacture of the castings and made inquiry as to the cost of the pattern and the cost of the castings; taxpayer quoted prices on the two articles separately. Upon being given the order, taxpayer proceeded to manufacture or produce the pattern. By the use of the pattern, the casting was manufactured. After the casting was manufactured, it was shipped to the out of state buyer. When the casting was shipped to that customer, he was "billed" separately for the pattern and the casting.

As to what happened to the pattern after the casting was shipped and both articles paid for by the purchaser, Mr. Latshaw testified as follows:

### Direct

"Q. Now, I will ask you whether or not during the period involved in this sales tax assessment, you had made sales of castings to customers outside of the State of Alabama, under circumstances where those castings were shipped in interstate commerce to customers outside the State of Alabama, where the charges made for the patterns, as distinguished from the castings, amounted to $7,009.32? A. Yes, sir.

\* \* \* \* \* \*

"Q. Now, those charges for patterns, Mr. Latshaw, were mailed by you to customers outside of Alabama at the time you shipped those customers' castings to them in interstate commerce, were they not? A. That is correct.

"Q. Now, Mr. Latshaw, were those patterns themselves shipped at that time? A. Well, we have two practices, we at first—lots of times the customers demand that we ship them with the finished job, and then again they leave them in our storage for some time, and title remains in their possession, to be shipped whenever they stipulate to go out.

"Q. Now, during the time that you have them, if anything happened to them, whether from act of God or anything else, would you have to make additional patterns for them? A. Yes, we are liable for them as long as they are in our possession.

"Q. You are required then to ultimately send to your buyers outside of the State of Alabama these patterns? A. That is correct. Any patterns we make and charge them for, we are due to ship them whenever they say so.

"Q. And ultimately you are going to have to ship all these patterns outside the State of Alabama? A. That is correct. I can state that in one case here about two years ago we had various patterns accumulating over a period of fifteen years for the Bogalusa Paper Company, and about

622

two years ago we sent a truck in and took every one of those out.

"Q. And how long does it generally take before they ask for them? A. You can't tell; it might be one year and it might be five years or might be six years. I can show you a case where Ingalls left a pattern here not long ago, and asked that their pattern be returned."

### Cross Examination

"Q. Are the patterns always shipped out of the state? A. Whenever the customer specifies.

"Q. When they specify—is it not the custom that these patterns are left in your shop? A. Not necessarily.

"Q. On many occasions? A. Some are and some are not.

"Q. Are your books such as to distinguish when such shipments of patterns are made and when they are stored? A. That is correct.

"Q. They are? A. Yes, sir, and also we can tell the date they are shipped out of the state to the customer, wherever they are shipped to * * *. I would like to report a condition that maybe the State would like to know too * * * that sometimes, when we make a set of patterns, one of these orders might run eighteen months or two years, and castings being made off of those same patterns; where you couldn't make shipment of the patterns with the initial shipment of the castings—but we have and can show you, where we had an order and built patterns, and over a long period of time—for instance, it might have been a set of manifold castings and we might have had the first shipment to go out in say, six months, and when the fourteenth set went out it might have been eighteen months from the date we manufactured those patterns so we couldn't ship them right away, and yet it would show on your purchase order.

"Q. The patterns then would remain here during the entire time the castings were being made? A. That is correct.

"Q. Then you were using the vendor's [obviously "vendee" was intended] patterns to make castings for him? A. That is right."

### Re-direct

"Q. Mr. Latshaw, with respect to Mr. Culverhouse's [counsel for the State] last question, when you said that you were using the vendor's patterns, were you trying to state that they were entitled to the patterns? You would use the patterns you had made subject to the vendor's [vendee's] orders, would you? A. That is correct.

"Q. You weren't addressing your answer then to any technicalities you were entitled to? A. No, sir, whenever we bill them the title goes to them."

### Re-Cross

"Q. After the manufacture of these patterns, in whom is the control vested? A. The control is vested in the customer when we bill him."

The evidence shows a taxable event, a sale within the meaning of the sales tax law. Subsec. (e), § 752, Title 51, Code, as amended. The patterns were manufactured on orders of buyers. Upon completion, in accordance with the understanding of the parties, they were used in the production of the castings. Buyers paid taxpayer for the patterns, title to which, according to taxpayer's president, passed at the time taxpayer "billed" the buyers for the patterns. True, the evidence shows that the patterns remained in the actual possession of the taxpayer in this state, but we think it is clear from the testimony that the parties understood that actual delivery to the buyer was not necessary to the passing of title. Constructive delivery is shown by the following statements of Mr. Latshaw: "* * and then again they leave them in our storage for some time, and title remains in their possession, to be shipped whenever they stipulate to go out. * * * Whenever we bill them title goes to them. * * * The control is vested in the customer when we bill him." The statement of Mr. Latshaw that taxpayer is liable to the customer as long as the pattern remains in its possession is not inconsistent with his testimony that title passed when taxpayer billed the customer. Whether liable as a bailee or in accordance with the terms of some special agreement with the buyer does not appear.

Actual delivery is considered as of the greatest importance in determining whether there was an intention to pass title. But there may be a constructive delivery, and the intention of the parties, however disclosed, is conclusive on the question of whether title passed. Shealy v. Edwards, 73 Ala. 175; Shriner v. Meyer, 171 Ala. 112, 55 So. 156. The statements of Mr. Latshaw to the effect that title to the patterns passed when taxpayer "billed" the customer for them were, in legal consequence, but his way of expressing his understanding of the agreement or intention of the parties.

The sale of the patterns here taxed and the sale of the castings constituted separate and distinct transactions. The patterns were necessary to the manufacture of the castings. Perhaps those who were desirous of securing castings from taxpayer might have obtained the castings without also buying the patterns from which the castings were to be produced. In that event, no doubt, the cost of the castings would have included the cost of manufacturing the patterns. But title to the pattern would have remained in the taxpayer, and the purchaser would not have been entitled to the use of the pattern in the future in the production of other castings.

But we cannot decide this case on the manner in which the parties might have dealt with each other. We must consider the manner in which they did transact their business. The evidence is clear to the effect that the buyer ordered two separate and distinct articles to be manufactured by taxpayer, title to both of which should ultimately go to the purchaser. Such articles were manufactured and we think the evidence shows that in accordance with the intention of the parties title passed.

The separation of the two articles cannot be explained as being a mere matter of bookkeeping, for as before indicated, the evidence is, in our opinion, subject to no other construction than that for some reason the purchasers desired to obtain title to two separate and distinct articles, namely, the pattern and the casting.

Since the sale of the patterns here taxed and the sale of the castings constituted separate and distinct transactions, the right of the State to tax the sale of the patterns is not affected by the interstate character of the sale of the castings.

Generally, when a sale involves the delivery of merchandise to a destination outside the state where sold, the validity of a sales tax levied by such state on such transaction is denied. Crew Levick Co. v. Commonwealth of Pennsylvania, 245 U.S. 292, 38 S.Ct. 126, 62 L.Ed. 295; J. D. Adams Mfg. Co. v. Storen, 304 U.S. 307, 58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429.

But, "sales completed entirely within a state are not transactions in interstate commerce; and this rule has been applied to a completed contract of sale between residents of a state, and a contract between citizens of different states, when the contract is made and delivery accepted in the state where the property is situated, although the buyer intends to ship the property outside the state." 15 C.J.S., Commerce, § 26, P. 300, citing In re Conecuh Pine Lumber & Mfg. Co., D.C., 180 F. 249; Brunner v. Mobile-Gulfport Lumber Co., 188 Ala. 248, 66 So. 438. See, Dept. of Treasury of Indiana v. Wood Preserving Corp., 313 U.S. 62, 67, 61 S.Ct. 885, 888, 85 L.Ed. 1188, 1193.

We are not told how or where the orders for the patterns were made. For aught that appears in this record, they were made as well as accepted in this state. The sale itself was complete, under the undisputed facts in this record, when taxpayer billed the purchaser for the pattern. Thereafter taxpayer held the pattern in storage on behalf of the purchaser, in accordance with an understanding between them, the terms of which are not shown by the record. The purchase price has been paid. The evidence does not even support an inference to the effect that the parties did not consider the sale of the patterns complete until they should be actually delivered to the purchaser beyond the boundaries of this state.

We think the evidence shows the parties understood that the transaction was wholly completed in this state.

624

Even if the taxpayer and each of the purchasers had definitely understood that after the completion of the transaction, that is, after the castings had been produced from the patterns, the patterns would be moved out of the state of Alabama to the state of the residence of the purchaser, this would not make the sale an interstate transaction under the facts in this case. Trotwood Trailers v. Evatt, 142 Ohio St. 197, 51 N.E. 2d 645. This last cited case has close parallel, both in facts and in legal implications, to the case at bar. True, in the Trotwood Trailers case, actual delivery of the product was given to the buyer in the seller's state, that is, the state of manufacture, and it was then moved to the state of the residence of the buyer. But in the case at bar there was constructive delivery in accordance with the clear intention of the parties.

However, in the instant case, we do not think the evidence can be said to show definitely that as to the patterns here involved, the purchaser and the taxpayer had any definite understanding or agreement that the patterns would definitely be moved outside of the state. True, Mr. Latshaw replied in the affirmative to questions propounded by his counsel as to whether or not the patterns would ultimately move beyond the boundaries of this state. But a careful reading and analysis of his replies to such questions clearly indicate that his affirmative reply was predicated on a course of conduct over a period of years in dealings with other purchasers and was not based on any understanding between the taxpayer and the purchasers of the specific patterns here involved.

 We are of the opinion that the evidence presented in the trial court was not sufficient to overcome the presumption of correctness of the assessment made by the Department of Revenue and that the trial court erred in vacating and annulling the assessment of the Department of Revenue, as indicated in its decree.

The decree appealed from is reversed and the cause is remanded.

Reversed and remanded.

BROWN and LIVINGSTON, JJ., concur.

SIMPSON, J., concurs specially.

SIMPSON, Justice (concurring specially).

I concur in the conclusion on the basis of the finding in the opinion that it cannot be said that the evidence showed that "the purchaser and the taxpayer had any definite understanding or agreement that the patterns would definitely be moved outside of the state." Brunner v. Mobile-Gulfport Lumber Co., 188 Ala. 248, 66 So. 438.

On Rehearing

LAWSON, Justice.

Appellant has filed application for rehearing wherein it is insisted that we should have rendered a decree in this court rather than remand the cause to the circuit court. We are in accord with this insistence. § 140, Title 51, Code 1940; State v. Woods, 242 Ala. 184, 5 So.2d 732. It results that the decree of the trial court is reversed and a decree will be here rendered for the amount of the assessment made against appellee by the Department of Revenue of the State of Alabama.

Judgment corrected. Application for rehearing overruled.

LIVINGSTON, C. J., and BROWN and SIMPSON, JJ., concur.