(78 South. 66)

McGEEVER et al. v. TERRE HAUTE
BREWING CO. (6 Div. 651.)

(Supreme Court of Alabama. Jan. 17, 1918.
On Rehearing, Feb. 16, 1918.)

1. APPEAL AND ERROR ☞1096(3)—REVIEW—
SUBSEQUENT APPEAL.

All assignments of error referable only to
matters preceding the former appeal and rever-
sal and not shown to have been subsequently
passed on will be stricken.

On the Merits.

2. PRINCIPAL AND SURETY ☞156 — PLEA
CHARGING CONSPIRACY—SUFFICIENCY.

In an action on bond for performance of
contract, a plea charging conspiracy between
contracting parties to violate prohibition law,
unknown to defendant when signing bond, but
not alleging such conspiracy a part of contract,
or contract a part of such conspiracy, or any
consideration therefor, is demurrable.

3. PLEADING ☞8(6) — CONCLUSIONS—VIOLA-
TION OF LAW.

A plea in action on bond for performance of
contract charging conspiracy to violate prohibi-
tion law, as rendering contract unenforceable,
held insufficient as not alleging the facts show-
ing offense, or that law forbade what pleader
conceived was done by the parties.

4. GUARANTY ☞27—CONSTRUCTION OF CON-
TRACT.

The contract of a guarantor must be strict-
ly construed according to the letter of the un-
dertaking.

5. GUARANTY ☞53(1)—DISCHARGE OF GUAR-
ANTOR — CHANGING CONTRACT WITHOUT
CONSENT.

The contract becomes a part of the agree-
ment by which a third party binds himself as
guarantor for its faithful execution, and its pro-
visions cannot be waived or changed to affect his
interests without his consent.

6. GUARANTY ☞56—DISCHARGE OF GUARAN-
TOR—EXTENDING TIME OF PAYMENT.

The provision in a contract, "this, however,
can be altered or changed by consent of the first
party," held to refer to the words immediately
preceding "this," and to permit parties to extend
time for payment after, but not before, termi-
nation of contract except by permission of
guarantors.

7. GUARANTY ☞86—SUFFICIENCY OF PLEA.

A plea setting up release of guarantors by
unauthorized extension of time of payment with-
out their consent, held to state a defense, and
not subject to demurrer.

8. GUARANTY ☞86—PLEA—INDEFINITENESS.

A plea of guarantors of a contract alleging
conspiracy of parties thereto, without knowledge
of guarantors, to violate a liquor license law,
held not specific as to contract referred to, and
therefore subject to demurrer.

On Rehearing.

9. GUARANTY ☞86 — PLEA — RELEASE OF
GUARANTOR.

A plea in action against guarantor held to
set up release of guarantor by extension of time
of payment in the contract guaranteed, and not
to set up mere indulgence or forbearance of
plaintiff to enforce liability upon default.

Appeal from Circuit Court, Jefferson Coun-
ty; H. A. Sharpe, Judge.

Action by the Terre Haute Brewing Com-
pany against Hugh McGeever and others on
a guaranty bond. Judgment for plaintiff,

and defendants appeal. Reversed and re-
manded.

The following are the pleas directed to be
set out:

Plea 9:

For further answer to complaint and each
count thereof defendant says that said contract
mentioned in complaint was mutually abrogated
by plaintiff and said Siegel, without the knowl-
edge or consent of said defendants, or either of
them, in the manner following, to wit: That on
June 1, 1912, plaintiff appointed said Siegel as
his agent for all beer shipped by plaintiff to said
Siegel during the months of June, July, and Au-
gust, 1912, and for the price of which this suit
is brought, and that thereupon said plaintiff and
said Siegel in pursuance of said agency procured
the excise commission of Jefferson county to is-
sue said Siegel a subsidiary license as agent of
plaintiff under and by virtue of the license there-
tofore issued plaintiff to do business in the year
1912 in Mobile county as a wholesale brewer un-
der section 12, Acts 1911, p. 266, and that by
reason of the foregoing, and with the intention
on the part of defendant and said Siegel in con-
spiring to defeat the state of Alabama and Jef-
ferson county of the license of $1,500 contrary
to the laws of said state, and defendant further
averred that said conspiracy on the part of said
plaintiff and Siegel was a device or scheme to
violate the prohibition laws of the state.

The demurrers to this plea were as fol-
lows:

(5) It does not appear from such suit that the
alleged conspiracy therein set forth entered into
or formed a part of said contract.

(6) It does not appear that the contract so
entered into and referred to therein entered into
or formed a part of the alleged conspiracy.

(7) It does not appear from said plea that the
contract therein referred to was any considera-
tion of an inducement to the alleged conspiracy.

Plea 10:

Answering each count separately and severally
defendants say that said bond sued on is condi-
tioned for the faithful performance of a certain
contract between plaintiff and said Siegel which
is set out in the complaint, in which said con-
tract it is provided that plaintiff should furnish
to said Siegel certain quantities of beer in car-
load lots upon limited credit as follows: "All
beer sold and shipped by the first party to second
party under this agreement shall be paid for by
the second party in cash or New York Exchange
as follows: When the fourth car is ordered, the
first shall be paid for, etc., and settlement shall
continue in like order throughout the terms of
this contract, that is, the second party shall
have a line of credit equivalent to three car-
loads of beer," and defendants say that after
shipping three cars of beer under the terms of
said contract, to wit, two cars on May 14, 1912,
each aggregating 24,000 pounds, and one car on
May 15, 1912, aggregating 24,000 pounds, and
without defendants' consent, plaintiff shipped an-
other car to said Siegel on, to wit, May 21, 1912,
and before said Siegel had paid said plaintiff for
said first, second, or third carloads of beer, or
either of them, and without requiring said Siegel
to pay for said first, second, or third carload of
beer, or either of them, and defendants say that
in so extending the time for payment for three
said carloads of beer as aforesaid, these defend-
ants were thereby released from liability on said
bonds sued on, and defendants further say that
said plaintiff continued to ship beer to said Sie-
gel subsequent to May 21, 1912, and that all
beer sold and shipped by said plaintiff to said
Siegel subsequent to May 21, 1912, was not ship-
ped in accordance with the terms of said con-

tract, but that each of said subsequent shipments was made by said plaintiff to said Siegel at a time when said Siegel was indebted to said plaintiff for three carloads of beer or more, and that each of said subsequent shipments was made without notice by plaintiff to defendants or either of them, and without the knowledge or consent of defendants or either of them, and defendants say that said first three cars of beer shipped by plaintiff to Siegel have been paid for in full since May 21, 1912.

Plea 11:

For further answer to complaint defendants say that said plaintiff as an inducement to the execution of said contract between said plaintiff and said Siegel and forming a part of the consideration of his entering into said contract mutually agreed without the knowledge or consent of defendants or either of them that said Siegel should sell the beer purchased under said contract, and for the price of which this suit is brought, under and by virtue of plaintiff's license as a brewery in the county of Mobile, state of Alabama, for the year 1912, and defendants further say that said plaintiff and said Siegel without the knowledge and consent of these defendants or either of them did procure from the excise commission of Jefferson county, state of Alabama, a permit or license to be issued to said Siegel, and that said device and scheme was entered into by said plaintiff and Siegel as a conspiracy to deprive the state of Alabama and Jefferson county of $1,500, contrary to section 12 of the Smith Bill (General Acts 1911, p. 257), without the knowledge or consent of the defendants or either of them, and that said Siegel with the knowledge and consent of said plaintiff did sell all the beer shipped by said plaintiff to said Siegel under and by virtue of said license granted to said Siegel aforesaid.

Tillman, Bradley & Morrow, Richard H. Fries, William B. White, and J. D. Rucker, all of Birmingham, for appellants. Sterling A. Wood, of Birmingham, for appellee.

### On Motion.

McCLELLAN, J. [1] The submission includes a motion by appellee to strike all assignments referable alone to the erstwhile judgment rendered by the circuit court of Jefferson in this cause on February 14, 1916, which judgment preceded the former appeal and decision of reversal made in this cause as reported in 73 South. 889.[1] The second, present, appeal is from the judgment rendered, after previous reversal, by the court on May 15, 1917, and in this judgment entry no ruling is recited as having been made in the circuit court with respect to the subject-matter of the assignments of error to be enumerated. The motion is well taken under the apt authority of Ala. City Ry. Co. v. Bates, 155 Ala. 347, 46 South. 776; Sellers v. Dickert, 194 Ala. 661, 69 South. 604. The effect of the motion to strike assignments of error is to eliminate the assignments numbered 1, 2, 3, 4, 5, 9, 10, 11, 12, 13, 14, 15, 16, and 17. The motion is sustained, and the indicated assignments are therefore stricken.

### On the Merits.

The appellee, an Indiana corporation, brought this suit against the appellants as sureties on a bond of guaranty. The instrument declared on purports to have been executed by the appellants and to guarantee the performance of a certain contract between Abe Siegel and the brewing company for the purchase in Indiana of beer by Siegel. A more ample statement of the case may be found in 73 South. 889.[1] The complaint contained amended count 1, whereby the legal effect of the contract was undertaken to be averred, concluding with allegations of breach; and count 2, wherein is set out the bond and the contract, the performance of which the bond purported to guarantee, together with allegations of breach. The defenses were constituted of issues tendered by the general traverse of the complaint, and plea 1, which, as amended, reads:

"For answer to the complaint and to each count thereof defendants say that the bond on which the action was founded was not executed by them, nor either of them, nor by any one authorized by them, or either one of them in the premises."

Aside from the above-enumerated assignments of error which the motion eliminates, those remaining are predicated of rulings on pleas, of excerpts from the oral charge of the court, of the action in giving and refusing, respectively, special request for instructions, and of the overruling of the motion for new trial. The fifth assignment complains of the action of the court in sustaining demurrer to "plea 8," noted as being at transcript pages 21, 22. In the judgment of May 15, 1917, there is recited such a ruling as to "plea 8." On pages 21, 22, of the transcript there is a pleading designated "plea A" opposite its caption; but opposite the title, "Plea and Answer to the Complaint," this appears in dim typewriting: "#8." In the judgment entry of May 15, 1917, preceding the stated ruling on "plea 8," it is recited that plea A was "withdrawn." This recital undoubtedly referred to "plea A" above mentioned. That is the only "plea A" we can discover in the record. The dim characters, "#8" cannot be accepted as designating "plea A" as plea 8. So there is no "plea 8" in the transcript to which the fifth assignment can be referred. The appellee's brief, at page 12, correctly notes the absence of any "plea 8" in the transcript.

The report of the appeal will contain pleas 9, 10 as amended, and 11. There is argument in the brief for appellant based upon a ruling sustaining demurrer to plea 10 (before its amendment); but there is no assignment of error presenting for review that claim of error.

[2, 3] Plea 9 was subject to the demurrer. In general theory it sought to bar a recovery on the bond on the ground that the contract, the performance of which the bond assured, was abrogated by the principals as the necessary consequence from particular acts averred, without the knowledge and consent of the sureties, the defendants or any of them. It is to be observed that the plea

does not charge, unqualifiedly, the abrogation of the contract by the principals. It would invoke the legal deduction of abrogation of the contract, by the principals thereto, from the particular facts recited in the plea. These facts the pleader characterizes as a conspiracy to violate the then existing prohibition laws of the state of Alabama. The fifth, sixth, and seventh grounds of the demurrer were due to be sustained under the authority afforded by the doctrine of the opinion delivered on the former appeal. 73 South. 889, 891.[2] It was there held that in order to operate to constitute a conspiracy, to violate Alabama's prohibitory statutes, that would defeat a recovery on this bond, the contract, of which the bond undertook to assure faithful performance, must have had either a consideration tainted with the asserted unlawful purpose of these principals, or such unlawful design must have induced the formation of the contract declared on. While the demurrer was well sustained on the grounds indicated, it is by no means clear that the plea was sufficient with respect to the facts upon which the pleader's conclusion was rested. Indeed, it does not appear from any affirmation of fact made in the plea that the then existing laws of this state were in fact offended, or that they forbade what the pleader conceived was done by these principals, if, in fact, the purpose of their agreement ever became effective.

[4, 5] In plea 10, as amended, express reference was made to the fact that the contract mentioned in the plea was the same contract set out in the complaint. There is no contention that the contract declared on in the first count was other than the same contract set out in the second count. The plea must be read and considered in connection with and in the light of the pleading it purports to answer. The plea, as amended, quoted the feature of the contract, of which the bond purported to guarantee performance, whereon the defendants relied to show such a change of the contract by the principals as operated to release the sureties on the bond. The form of this plea was unobjectionable. It is settled in this jurisdiction that the contract of a guarantor must be strictly construed, according to the letter of the undertaking. Manatee County Bank v. Weatherly, 144 Ala. 655, 39 South. 988, and authorities therein cited. Where a third party becomes interested in the contract entered into by other parties by binding himself to its faithful execution, the contract becomes a part of his obligation, and its provision cannot be waived or changed, in any material respect, so as to affect his interest without his consent. First National Bank v. Fidelity & Deposit Co., 145 Ala. 335, 40 South. 415, 8 Ann. Cas. 241; Ala. Fidelity & Casualty Co. v. Ala. Fuel & Iron Co., 190 Ala. 397, 405, 406, 67 South. 318.

[2] 198 Ala. 474.

[6, 7] In the contract between appellee and Siegel—a contract constructed on a blank form evidently prepared by the brewing company for use in the conduct of its business—this paragraph occurs:

"All beer sold and shipped by the first party to the second party, under this agreement, shall be paid for by the second party in cash or New York Exchange as follows: When the fourth car is ordered the first shall be paid for, etc., and settlement shall continue in like order throughout the term of this contract, that is, the second party shall have a line of credit equivalent to three carloads of beer, but upon the determination of this contract by consent or otherwise, all sums due and owing first party, shall be immediately paid; *this, however, can be altered or changed by consent of the first party.* The first party shall have the right at any time to terminate this contract for any default of second party hereunder." (Italics supplied.)

According due effect to the rule of construction before restated, the italicized provision in the quoted paragraph cannot be soundly interpreted as authorizing the principals or either of them in that contract to alter or change the distinctly expressed line of limited credit thereinabove defined. The italicized expression is controlled in its application by the pronoun *this*, and that pronoun has reference only to the provision for immediate payment of "all sums due and owing said first party" at the time the contract should be terminated "by consent or otherwise." In other words, the authority to alter or change referred to in the italicized provision of the contract was intended to justify an extension of the time of payment *after* the determination of the contract by consent or otherwise. If the italicized provision should be interpreted as authorizing an alteration or change in the line of credit specifically defined violence would, in our opinion, be done to the very grammatical structure of the quoted provision of the contract. Plea 10, as amended, sought to assert a release of the guarantors in consequence of the shipment by the appellee of a fourth carload of beer, on, to wit, May 21, 1912, before said Siegel had paid the plaintiff for any one or all of the three cars previously shipped to Siegel without requiring Siegel to pay for said first, second, or third carload of beer, or either of them, all without the consent of the defendants; and that the plaintiff continued to ship beer to Siegel subsequent to May 21, 1912, and that all beer sold and shipped by plaintiff to Siegel subsequent to that date was not shipped in accordance with the terms of said contract; and that each of said shipments by said plaintiff to Siegel was at a time when Siegel was indebted to the plaintiff for three carloads of beer or more, and that these subsequent shipments were made without the knowledge or consent of any of these defendants; and the plea concludes with the averment that the first three cars of beer shipped by the plaintiff to Siegel have been paid for in full since May 21, 1912. The

plea, therefore, asserts a departure by the principals from the limited line of credit by which the sureties' contractual obligation was to be measured, and to conform to which limited line of credit the brewing company was obliged if it would avoid the release of the sureties from the obligation of the guaranty on which the brewing company declares. It was error to sustain the demurrer to plea 10 as amended.

[8] Plea 11 was subject to the same objection, taken in the demurrer, as was plea 9, treated above in this opinion. The plea is not specific in its reference to the contract referred to therein. On the face of the plea it is at the very least doubtful whether the allusion to a contract had reference to the contract copied in the second count, or to some other contract between the principals. There was no error in sustaining the demurrer to plea 11.

A consideration of the excerpts from the oral charge of the court, to which exceptions were reserved and assigned for errors here, does not disclose any error in these respects, under the particular averments of the pleadings constituting the issues tried in the court below. The trial court was correct in its view that the alteration of the contract, if such was made, must have been material.

For the error committed in sustaining the demurrer to plea 10, as amended, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur.

On Rehearing.

McCLELLAN, J. [9] The conclusion that error underlies the judgment results from the ruling of the trial court in sustaining plaintiff's demurrer to plea 10 as amended, and this result is contingent upon the construction taken of the before-quoted feature of the contract between Siegel and the plaintiff; more particularly upon the interpretation accorded the phrase, italicized in the quotation ante, "this, however, can be altered or changed by consent of the first party." The elaborate argument in support of the plaintiff's application for rehearing has been accorded full consideration. The court remains satisfied with the views announced in the original opinion. Without assuming to restate the argument, it will suffice to note that the argument against the sufficiency of the amended plea, when assailed by appropriate demurrer, omits to take due account of this phrase, "*but upon the determination of this contract by consent* or otherwise, all sums due and owing said first party, shall be immediately paid." The word *but*, in that phrase, is employed in "an adversative sense with reference to what precedes," thus interposing between the preceding provisions stipulating for a limited line of credit *and* the phrase, "this, however, can be altered or changed by consent of the first party," a thought in opposition to that expressed in defining the limited line of credit, and evincing, unmistakably, a purpose to require immediate payment of what was due "upon the determination of the contract by consent or otherwise." The interposition of this antithetical (to the preceding provisions for a limited line of credit) proposition absolutely forbids the reference of the succeeding phrase, beginning with *this*, to expressions preceding the phrase thus interposed. To transpose the phrase beginning with *this* so as to visit its qualifying effect upon the provisions plainly defining the limited line of credit would, we think, do violence to the very grammatical structure of this paragraph of the contract. If this antithetical proposition had not been interposed, as it is, there would be no hesitancy in according the phrase, beginning with *this*, the effect to qualify the provisions preceding it; but, as stated, the language and grammatical structure of the contract places an insuperable obstacle to that course. The use of the semicolon—a mere matter of punctuation—cannot be regarded as evincing an intent to refer the phrase, beginning with *this*, to provisions preceding the antithetical expression which itself immediately precedes the phrase to the interpretation of which a review of plea 10 as amended has invited our consideration.

The insistence, as upon the authority of Saint v. Wheeler, 95 Ala. 362, 376, 10 South. 539, 36 Am. St. Rep. 210, that this plea only asserts that the plaintiff extended to Siegel "mere indulgence," merely forebore to take steps to enforce liability upon default, is not justified by the averments of the amended plea 10. The pith of the plea is that the plaintiff accorded Siegel credit beyond the limit of credit stipulated in the contract, by which instrument alone the obligation of the sureties was measurable and could be preserved.

The application for rehearing is denied.