(88 South. 423)
## MARSH v. ELBA BANK & TRUST CO.
(4 Div. 845.)

(Supreme Court of Alabama. Dec. 2, 1920. Rehearing Denied April 7, 1921.)

1. **Appeal and error** ⟨key⟩1180(1) — **Reversal sets aside all rulings embodied in judgment.**

The effect of the reversal of a judgment by the Supreme Court on a former appeal was to annul it in its entirety, and to set aside all the rulings of the court on the pleadings embodied in that judgment.

2. **Appeal and error** ⟨key⟩1012(1) — **Findings of trial court on evidence ore tenus not disturbed unless contrary to great weight of evidence.**

When a cause is tried by the court without a jury, and evidence is ore tenus, or partly so, its conclusion on facts will not be disturbed unless plainly contrary to the great weight of the evidence, but this rule is without force where the material and controlling facts are established by undisputed evidence, though in some of the minor details the evidence presents some conflict.

3. **Insurance** ⟨key⟩216 — **Relation of bank and widow held one of trust and confidence, requiring utmost frankness on the part of the bank.**

In a controversy between a widow and a bank, wherein the bank claimed that it was entitled to the proceeds of life policies on decedent's life, *held*, that the circumstances and situation of the bank officers and the widow constituted a relation of trust and confidence which imposed upon the bank and its repre-

sentatives the duty to deal with the widow with utmost frankness, and to inform her that a transfer by another bank of its rights in the insurance policies was without legal force and vested no right or interest to the policy, and cast upon the bank the burden of showing that undue advantage was not taken of the widow in obtaining an assignment from her.

**4. Insurance ⬦⇒646(1) — Bank held not to meet burden of proof resting on it to show good faith in obtaining assignment of insurance from widow.**

In controversy between a bank and a widow as to the ownership of proceeds of insurance policy on life of deceased husband, wherein relation of trust and confidence existed, evidence on the part of the bank *held* not to overcome the burden of proof resting upon it to show that the bank dealt with the widow with frankness when obtaining from her an assignment of the proceeds of the policies.

**5. Insurance ⬦⇒645(2)—Averment that plaintiff released personal property covered by mortgage held material, under plaintiff's claim that beneficiary ratified assignment of policy by decedent.**

In a controversy between bank and widow of insured concerning the ownership of the proceeds of life policies, where it was claimed by the bank that the insurance had been assigned to it, *held*, that an averment in plaintiff's replication setting up ratification by the widow of the assignment that, under the agreement of settlement with the widow, the bank released all the personal property covered by its mortgage, was a material averment, which must be supported by proof.

Appeal from Circuit Court, Coffee County; H. A. Pearce, Judge.

Action by the Elba Bank & Trust Company against the Mutual Life Insurance Company of New York, in which defendant filed an interpleader, bringing in Eva C. Marsh as a party. From a judgment in favor of the bank, the latter appeals. Reversed and rendered.

J. A. Carnley, of Elba, and J. J. Mayfield, of Montgomery, for appellant.

Under the interpleader all equitable defenses may be tried and all equitable titles are available. Sec. 6050, Code 1907; 168 Ala. 270, 53 South. 182. Under all facts and circumstances of the case, there was fraud available to the interpleader to nullify the transfer, and the court was in error in the judgment rendered. Kerr on Fraud and Mistake, 143; 2 Ala. 292; 66 Ala. 20, 41 Am. Rep. 742; 69 Ala. 555, 44 Am. Rep. 528; 7 Cranch, 218, 3 L. Ed. 321; 19 Barb. (N. Y.) 249; 2 Ves. 155; 1 Stuart, 72; 9 Wall. 364, 19 L. Ed. 734; Smith on Frauds, 2; 23 N. H. 535.

W. W. Sanders, of Elba, for appellee.

Most of the evidence is ore tenus, and all presumptions will be indulged in favor of the finding of the trial court. 76 South. 932; 16 Ala. App. 648, 81 South. 140. The wife had the right to use her property in paying her husband's debts. 143 Ala. 613, 42 South. 106; 192 Ala. 200, 68 South. 267. Fraud is never presumed, but must be proven as alleged. 187 Ala. 268, 65 South. 793; 180 Ala. 98, 60 South. 172; 185 Ala. 221, 64 South. 82. A party defrauded must assert with diligence his repudiation. 2 Pom. 1914, 1915; 130 Mass. 50. Failure to do so, and acts concerning it with knowledge, amounts to a ratification. Authorities supra.

In order to rescind a party must always restore the benefits. 113 Ala. 519, 21 South: 376, 59 Am. St. Rep. 135; 158 Ala. 431, 47 South. 573; 145 Ala. 605, 40 South. 126. The doctrine of equitable estoppel applies here. 21 Ala. 424; 15 Ala. 91.

BROWN, J. This is the third appeal in this case. The result of the second appeal, with a brief statement of the nature of the case and issues then before the court, will be found reported in 202 Ala. 401, 80 South. 374 (Elba Bank & Trust Co. v. Marsh). The first appeal involved questions not now pertinent. Marsh v. Mutual Life Ins. Co., 200 Ala. 438, 76 South. 370.

[1] The second appeal was from a judgment of the circuit court rendered on the 5th day of July, 1917. The effect of the reversal of that judgment by this court was to annul it in its entirety, and set aside all the rulings of the court on the pleadings embodied in that judgment. Alabama City, Gadsden & Attalla Ry. Co. v. Bates, 155 Ala. 347, 46 South. 776; McGeever et al. v. Terre Haute Brew. Co., 201 Ala. 290, 78 South. 66.

After remandment of the cause, the substituted defendant amended her plea of interpleader, or statement of claim, by adding thereto what is denominated "statement A," and to the interpleader as thus amended, the plaintiff filed replications 1 to 5, inclusive; the first being a general replication, the second a general denial that the plaintiff was guilty of fraud, as charged in the defendant's interpleader, and the third, fourth and fifth setting up a transfer and assignment of the policy to the plaintiff, to wit, on the 27th day of January, 1916, and a subsequent ratification thereof.

The issues as presented on the trial, and here for consideration, are, therefore, in short: The defendant, appellant here, claims that she is entitled to the funds in controversy (1) as the beneficiary named in and owner of the policy of insurance; (2) that the assignment of the policy under which the defendant claims the fund was procured by actual fraud or deceit, through a misrepresentation by the plaintiff of its contents; and (3) that her signature was procured to such transfer by fraud and undue influence. The plaintiff, appellee here, on the other hand,

---

by its replications asserts (1) that the defendant was not the owner of the policy at the time of the bringing of the suit; (2) that there was neither actual nor constructive fraud practiced on the defendant in procuring her signature to said transfer; and (3), that since said transfer, by her acts and deed, she has fully confirmed and ratified her previous act in assigning the policy, and she is now estopped to question the validity of such assignment.

On the issues thus joined the trial court, after hearing the evidence without the intervention of a jury, rendered a judgment for the plaintiff, and from that judgment this appeal is prosecuted.

[2] We are, of course, not unmindful of the well-established rule that, when a cause is tried by the court without a jury, and the evidence is ore tenus, or partly so, the trial court has the advantage over this court of seeing and hearing the witnesses, and its conclusion on facts is like unto the verdict of a jury, and will not be disturbed by this court, unless plainly contrary to the great weight of the evidence. This rule, however, is without force where, as here, the material and controlling facts are established by the undisputed evidence, though, in some of the minor details, the evidence presents some conflict. Bowling v. State, 204 Ala. 405, 85 South. 500.

The undisputed evidence in this case shows that Tavner Marsh died on the 17th day of January, 1916, leaving a valuable estate, consisting of a well-improved farm, valued at approximately $12,000, and personal property consisting of mules, cattle, hogs, corn, farming implements, and other property used in his farming operation valued at approximately $3,000, leaving as the only distributees of his estate the appellant, his widow, and three small children. He also left policies of life insurance, naming his wife as beneficiary therein; one for $3,000, and the other for $2,000; the proceeds of the last being the subject of this controversy.

At the time of the death of Tavner Marsh, he was indebted to the plaintiff, who held a mortgage on all of his property, said mortgage expressing an indebtedness of $5,126, and being executed by Marsh and his wife, embracing—

"all of our household and kitchen furniture, all crops of cotton and corn of every description raised or caused to be raised by us, or under our direction, during the years 1914, 1915, 1916, 1917, and 1918; all farming tools and implements; all live stock, personal property, and choses in action not herein otherwise named; all rents or advances to become due to either of us as landlord from any tenant in said county (Coffee) for the years 1914 to 1918, inclusive," etc.

Then followed a specific description of the personal property and his farm consisting of 237 acres of land. Embraced in this mortgage were stipulations authorizing and empowering the seizure and sale of said property before or after maturity, at public or private sale.

The Bank of New Brockton had a like mortgage, covering the same property, to secure an indebtedness of $1,185. Before Marsh's death, he, with his wife, had hypothecated the $2,000 policy of insurance with the Bank of New Brockton to secure a loan; but some time before his death this security had been withdrawn from the bank, for the purpose of depositing with the insurance company, to secure a loan of $197, the proceeds of which were applied to the debt of the Brockton bank; and, at the time of his (Marsh's) death, this policy was in the hands of the insurance company, and the Bank of New Brockton had no claim or right thereto.

On the 26th day of July, 1916, nine days after the death of Marsh, and before the defendant had recovered from the shock of his death, and while she was suffering from the strain of having nursed him through a long siege of tyhoid fever (his illness continuing for several weeks), the agents of the plaintiff went to the home of the deceased and listed all of his property, sold and carried away a lot of cattle, under the mortgage, and, on the same day, without the request of the defendant, proceeded to New Brockton and obtained from the Bank of New Brockton a transfer of its claim against the estate of Marsh, and the mortgage securing the same; and with the knowledge that the Bank of New Brockton had released the insurance policy as security, and that that policy was then on deposit with the insurance company, induced the agents of the Bank of New Brockton to give to the Bank of Elba a transfer of "all its rights" in and to said policy as a security.

On the same day, Mr. Rainer, an officer of the plaintiff, who listed the property and caused the cattle to be sold, was active in negotiating and arranging with one Braswell, a brother-in-law of the defendant's, to take over all the property belonging to Marsh's estate, pay the debts of the estate, and agree to support the widow and children of Marsh for a period of 10 years, at which time it was contemplated that the farm should be returned to her free from incumbrances. He also arranged with a brother of the defendant to carry her to plaintiff bank the following day, so that the necessary papers could be drawn for Braswell to sign; and also to prepare proof of death so that the insurance money could be collected, assuring the defendant, through one of her brothers, that this would be arranged and the money collected without one cent of cost to her, one witness testifying that the elder Rainer stated in substance "that he and the deceased Marsh were brother Masons, and he could not afford to take from the widow's mite, but that he preferred

to add to it." On the following day, the defendant was carried to the plaintiff bank, where she was informed that Braswell had refused to carry out his agreement. The plaintiff's cashier, aided by Rainer, then prepared the proof of death, which was signed, and, according to Amos (the cashier who prepared the papers) a transfer of the insurance was not then contemplated. However, contemporaneously with the preparation of the proof of death, or immediately thereafter, a transfer was drawn by Amos at the suggestion of Rainer in these words:

"For and in consideration of $1 to me in hand paid by the Elba Bank & Trust Co., of Elba, Ala., I hereby transfer and assign to the said Elba Bank & Trust Co. any interest or claim I may have in a certain insurance policy in the Mutual Life Insurance Co. of New York, N. Y. Said policy No. 1861904 for $2000, and transferred to the First National Bank of New Brockton on the 5th day of May, 1914, and transferred to the Elba Bank & Trust Co. by said First National Bank of New Brockton on the 26th day of January, 1916.

"In witness whereof I have hereunto set my hand and seal on this 27th day of January, A. D. 1916, in the town of Elba, county of Coffee and state of Alabama.
                          "Eva C. Marsh. [L. S.]"

The above transfer was witnessed and acknowledged before E. A. Chapman, at the request of Rainer or Amos, and immediately thereafter the defendant was placed in Rainer's automobile, and sent to her home.

Some few days thereafter—February 3, 1916—the plaintiff, by private deed of foreclosure, under the power of sale in the mortgage, conveyed to J. A. Marsh, on a recited consideration of $2,672.22, all the property of every kind and description, both real and personal, included in the two mortgages, at the same time turning over to a Mr. Warren, who, it seemed, had advanced to J. A. Marsh the money to consummate the deal, the mortgages which the bank held as security, and on the same day procured from the defendant a quitclaim deed on a recited consideration of $1, which was not paid, conveying to J. A. Marsh all of her right, title, and interest in and to said property.

The evidence shows that the indebtedness, including the debt transferred to the plaintiff by the Bank of New Brockton, had been reduced by the application of the proceeds of the sale of the cattle made January 26th to about $4,400, leaving as the only incumbrance on the property this debt, and a debt of about $4,500 due one Foreman, secured by a mortgage on the land only, and not then due—not maturing in its entirety for a period of about 10 years.

When Mrs. Marsh was requested to sign the transfer drawn by Amos, which, on its face, contains a premise false in law, to wit, that the insurance policy was "transferred to the Elba Bank & Trust Company by the First National Bank of New Brockton on the 26th day of January, 1916," she questioned the necessity therefor, because of said alleged transfer, and, instead of telling her that the transfer from the Bank of New Brockton was without legal force, according to Rainer, this occurred: "She said, 'You have got a transfer from the First National Bank, haven't you?' 'Yes; but I said I want one from you, if you want to pay it on your husband's debt with me, and I want one of my own writing. I want one my own way. * * * I said I haven't got any confidence in Jim Jones' transfer.'"

[3] From the evidence in this record, it is clear that the defendant was at a marked disadvantage, and wholly unequal, in the protection of her interest, against the efforts of the plaintiff to obtain from her the right to apply the insurance money to its debt. Rainer, who represented the interest of plaintiff, was the dominant spirit in the transaction, while the defendant seemed to have no will or judgment of her own in respect to the matter. From the circumstances and the situation of the parties, a relation of trust and confidence was in fact created, which imposed upon the plaintiff and its representatives the duty to deal with the defendant with utmost frankness, and inform her that the transfer by the Bank of New Brockton was without legal force, and vested no right or interest to the policy in the plaintiff bank. Nelson v. Brown, 164 Ala. 408, 51 South. 360, 137 Am. St. Rep. 61; Richter v. Richter, 180 Ala. 218, 60 South. 880; Cannon v. Gilmer, 135 Ala. 302, 33 South. 659.

[4] The evidence shows that the assignment by the defendant to the plaintiff of the policy of insurance was made under circumstances not affording an opportunity for competent, independent, and disinterested advice. It was not suggested to the defendant that she make the assignment to the plaintiff until a few minutes before she was ready to leave the bank, she having gone to the bank under the advice of plaintiff's representatives to carry out an arrangement of a different character, and to have prepared the proof of death under the policy of insurance. Immediately after the transfer of the policy was signed by the defendant, she was put in an automobile belonging to one of the Rainers, and sent to her home. At the time the transfer was signed, Pete Talbot, who, plaintiff asserts, was defendant's chief adviser, was not present, and Talbot swore:

"Mr. Rainer and I talked about the insurance, and my understanding was that Jones had a lien on it, and my sister there either wanted her property or the insurance."

If Talbot was not informed as to the invalidity of the transfer made by the Bank of New Brockton to the plaintiff, and no one

disputed his testimony, advice from him was not such as to overcome the presumption of fraud raised by the circumstances surrounding the parties at the time. Braswell, if he was consulted, or gave any advice to the defendant, was at the time contemplating taking over the property, including the insurance, and becoming the beneficiary of the transaction, and J. A. Marsh is shown to be the final beneficiary. Therefore, advice from persons so circumstanced could not meet the burden of proof resting on the plaintiff.

In respect to the alleged. ratification, the weight of the evidence is to the effect that the insurance was not mentioned on the occasion of the execution of the foreclosure deed by plaintiff to J. A. Marsh, or the quitclaim deed by the defendant to J. A. Marsh. Even if it was, there is no evidence showing, or tending to show, that the defendant was then informed, or had any knowledge, that the transfer from the Bank of New Brockton was without legal effect, and, as was said on former appeal:

"We are not impressed with the insistence that there has been a ratification of the policy transferred by the defendant growing out of the execution of the quitclaim deed executed subsequent thereto." Elba Bank & Trust Co. v. Marsh, 202 Ala. 401, 80 South. 374.

[5] Moreover, the plaintiff's several replications setting up the subsequent ratification of the assignment aver "that under the said agreement of settlement with the defendant, plaintiff released unto her all the personal property covered by its said mortgage, which was to .be hers by virtue of the agreement of settlement." The evidence shows that not a single item of property was released to the defendant. There was therefore a failure of proof to sustain this material averment of the plaintiff's replication. Woodall v. Peoples' Nat. Bk. of Leesburg, 153 Ala. 576, 45 South. 194; Ala. Nat. Bk. v. Halsey, 109 Ala. 196, 19 South. 522; Zadek v. Forcheimer, 16 Ala. App. 347, 77 South. 941.

For like reasons, the contention that the defendant must offer to restore what she received as a consideration for the execution of the quitclaim deed cannot be sustained. The plaintiff released nothing unto her, and hence there is nothing to be restored to the plaintiff. Moreover, by the execution of the foreclosure deed, and the surrender by the plaintiff of its securities to Warren, and by obtaining the execution of the quitclaim deed by the defendant to J. A. Marsh, and its delivery to him, it is not within the power of the plaintiff to restore the then status quo.

On the whole, we are clear to the conclusion that the money on deposit in court belongs to the defendant. The judgment appealed from will be reversed, and one here rendered awarding the fund to the defendant, and directing the clerk of the circuit court to pay the same over to her or her attorney of record.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

Note.—Since the decision of this case. but while still in fieri, it has been brought to the attention of the court that the fund in question is not in the hands of the clerk, but was paid over to the plaintiff, Elba Bank & Trust Company, by an order of the circuit court. Therefore, the direction in the foregoing opinion to the clerk to pay the money over to the appellant is hereby annulled, and the plaintiff bank is directed to restore the fund to the clerk for the benefit of the appellant, else execution to be issued in favor of appellant against the Elba Bank and Trust Company.

ANDERSON, C. J., and SAYRE, GARDNER, and MILLER, JJ., concur.